Louis Lepore *et al. d.b.a.* Atlantic Tool Company *vs.* George Fuscellaro *d.b.a.* Acme Tool and Gauge Company.

FEBRUARY 26, 1948.

Present: Flynn, C. J., Capotosto, Baker and Condon, JJ.

468

CONDON, J.   This is an action of assumpsit based on an alleged oral agreement for the manufacture of a jig for boring oil burner castings. The case was tried to a jury in the superior court and resulted in a verdict for the plaintiffs. Thereafter defendant filed a motion for a new trial which was denied by the trial justice. The case is here on defendant's exceptions to that ruling, to the admission and exclusion of certain evidence at the trial, and to a portion of the trial justice's charge to the jury.

We shall not consider all of those exceptions because we are of the opinion that the trial justice committed prejudicial error in that portion of his charge to which the defendant excepted, this exception being numbered twelfth in his bill of exceptions. He told the jury: "I am not going into the question of warranties because there is no question of warranties that enters into this particular case. There is no written contract. The machine wasn't purchased under a trade name. So, we don't go into any of those factors. We just go into the factor that there was actually a meeting of the minds at the time that letter was sent. There was a contract to deliver certain things and the point is: What were those conversations and what inferences were drawn from those conversations? That is for you to find out, whether the plaintiff fulfilled his part of the contract or not or whether the defendant got what he wanted or not. I think that, in a nutshell, explains the law applicable to this particular case." In view of the evidence, such statement

in our opinion could only confuse the jury or else lead them to conclude that they were permitted only to inquire into whether the plaintiffs had made and delivered to the defendant a jig that was capable of boring castings for oil burners. That was not the issue which was raised by the pleadings and which the parties sought to prove by their evidence.

The first question which the jury had to answer was what was the scope of the agreement entered into between the parties. Did the defendant simply order a jig that was capable of boring castings for oil burners or did he order a jig that would not only do that work but also do it faster than the jig he was using? There is a sharp conflict in the evidence on that question. Defendant testified that he ordered the jig with the understanding that it would be capable of doing faster work and thus speed up his production. On the contrary plaintiff Lepore, who negotiated the order, testified that it was merely for a jig that would make the borings desired, and that there was no understanding between him and the defendant that the jig would be capable of speeding up the production.

It appears from the evidence that the parties were brought into negotiations for the manufacture of the jig in question by a mutual friend, Thomas Conti, who incidentally was not produced as a witness by either party. As a result of Conti's intervention plaintiff Lepore met the defendant in his shop in Providence sometime in the month of October 1945. Defendant showed Lepore the work that he was doing and the jig he was then using and which has been described by some of the witnesses as a "homemade" jig. After several conversations, at some of which Lepore was accompanied by a designer, William F. Doll, it was finally agreed that defendant should give plaintiffs a written order for a jig, and accordingly on November 7, 1945 the following letter, admitted in evidence as plaintiffs' exhibit A, was addressed to the plaintiffs:

"Providence, R. I. Nov. 7, 1945.

Atlantic Tool Co.,
Providence, R. I.
Gentlemen:

Please consider this an order for one jig for boring Oil Burner castings, in accordance with our understanding.

Very truly yours,
Acme Tool And Gauge Co.
(signed)   George Fuscellaro"

The jig was delivered to defendant's shop on December 27, 1945, when he saw it for the first time and commented on its large size. It was set up in the shop and used by an employee of the defendant, but according to the testimony of defendant and his son Lawrence Fuscellaro, who was his shop foreman, it was found that the jig could not do the work any faster than the one which they had been using since 1933 and were using at the time plaintiff Lepore first called at the shop; and that it was too heavy to be used efficiently by one employee in a small shop such as defendant's and upon castings such as were used in his operations. Consequently defendant informed Lepore that he would not accept the jig.

However, through the later intervention of Conti, the defendant at first consented to allow the plaintiffs to make some alterations in the jig to see if they could satisfy defendant's requirements. Finally, however, defendant notified Lepore that it would be useless to make such alterations since he, Lepore, had admitted that he could not speed up the production of his jig, although he claimed that it would do better work than the one defendant was using. Defendant further testified that at that time he told Lepore: "I am not looking for better work. I am looking for faster work." Lepore testified that no such conversation took place between them. Thereafter plaintiffs rendered a bill for the jig and defendant refused to pay it but instead had his lawyer send plaintiffs a letter in which they were warned

to remove their jig within a certain time from defendant's shop or they would be charged for storage.

Plaintiff Lepore testified that the understanding he had with the defendant was that the plaintiffs were to manufacture a jig that would satisfactorily perform the defendant's work of boring castings for oil burners; that in accordance with such understanding plaintiffs hired a competent designer, William F. Doll, to draw the working plan for such a jig; that Doll accompanied Lepore to the defendant's shop and saw his jig and also had defendant describe to him the work which it was required to do; that he then drew the plans for the new jig; and that from those plans plaintiffs built the jig which they delivered to the defendant. Plaintiffs produced expert witnesses familiar with the craft of jig manufacture and they testified that such jig was a workmanlike job and capable of doing the work for which it was designed. Plaintiffs also presented competent witnesses who testified that the price which they charged for the jig was fair and reasonable.

Defendant did not question that the price was reasonable or that the jig was a workmanlike job. He questioned its capability of doing the work required in his shop at a faster rate than his old jig. He and his son Lawrence testified positively that it failed to speed up his production and, therefore, did not comply with the understanding between him and the plaintiffs referred to in the letter of November 7, 1945 ordering the jig.

We have adverted sufficiently to the evidence to show that if the defendant was to be believed the order was for a jig to serve a particular purpose, namely, to speed up his production by doing faster work in boring castings than his old jig was capable of doing. Under that agreement it was implied that the jig would not only be a workmanlike job but that it would meet the particular requirements for which it was specifically ordered. Whether or not there was such an agreement was, in the first instance, a question for the jury. But to charge them, as the trial justice did, that there was no question of warranties in the

case was, in effect, to invade their province and take that question away from them. If they believed the defendant's evidence of the agreement there would necessarily be the question of implied warranty. It was the duty of the trial justice to instruct them to determine what was the nature of that agreement and to decide not merely whether the jig was a workmanlike job capable of boring castings, but also whether it complied with the understanding between the parties when the order was given.

■ Plaintiffs have cited *Beggs* v. *James Hanley Brewing Co.*, 27 R. I. 385, as a case which governs the one at bar and justifies the trial justice's charge. We do not agree. An examination of the opinion in that case clearly discloses the factor that differentiates it from the case at bar. In the *Beggs* case the article was ordered for a special purpose, but by a *trade name*. Under that name the article was well known in the trade and this court held that as defendant specifically selected it by name it took upon itself the risk that the article would effect its purpose. Here the evidence shows that the jig which defendant ordered was not a *special* thing known specifically by a well-recognized trade name and ordered by such name. On the contrary, if defendant is believed, it shows that the jig was a thing ordered solely for a *special* purpose, and that in ordering it defendant expressly relied upon the skill and judgment of the plaintiffs to so manufacture it as to effectuate such purpose. See G. L. 1938, chap. 459, §15 (1) (4). *Matteson* v. *Lagace,* 36 R. I. 223.

For the reasons stated the trial justice erred in charging the jury as he did and defendant's exception thereto is sustained. Since on this view there must be a new trial, it is unnecessary for us to consider any of the defendant's other exceptions.

The defendant's twelfth exception is sustained, and the case is remitted to the superior court for a new trial.

*Ralph Rotondo,* for plaintiffs.

*Irving Brodsky,* for defendant.