357

**JEAN LANG DRESS COMPANY,**
Plaintiff,

v.

**ROBERT HIRSS COMPANY,**
Defendant.

Civ. A. No. 1740.

United States District Court
D. Rhode Island.

April 9, 1956.

Francis J. O'Brien, Samuel Temkin, Providence, R. I., for plaintiff.

Paul H. Hodge, Providence, R. I., for defendant.

DAY, District Judge.

In this action the plaintiff seeks to recover damages for an alleged breach of warranty, express or implied. Jurisdiction is based on diversity of citizenship and the existence of a controversy in the required amount.

In its complaint the plaintiff alleges in substance that on, to wit, July 2, 1952, the plaintiff entered into a contract with the defendant whereby the defendant was to manufacture certain dress fabric of first quality and suitable to be converted into dresses; that the plaintiff relying upon the special skill of the defendant ordered large quantities of this dress fabric and thereafter converted the same into dresses for sale; that it paid the defendant for said fabrics, and therafter, after manufacturing them into dresses, ascertained that the fabric was not of good quality and was not suitable to convert into dresses; that because of the defective quality of the fabric, it lost a profit and advantage it would have had if the fabric had been of good quality and suitable for manufacture into dresses and other sums of money.

In its answer the defendant admits the jurisdictional averments of the complaint and denied its remaining allegations.

The evidence establishes the following facts: On July 2, 1952 and for at least twenty-two years prior thereto the plaintiff had been a manufacturer of dresses with a plant in Minneapolis, Minnesota;

that for eight or ten years prior to July 2, 1952 it had employed one Paul S. Mauer, of New York, a textile consultant and buyer of materials, on an annual retainer basis to advise it as to the fabrics it should buy for conversion into dresses and to assist it in the purchase of fabrics which the former should recommend for purchase after the latter should decide to use any such fabric in its operations; that Mauer had been engaged in such role for more than twenty years and acted in a similar capacity for many garment and dress manufacturers like the plaintiff; that prior to July 2, 1952, the defendant whose plant was located in Woonsocket, Rhode Island, had been engaged primarily in the manufacture of fabrics for the drapery trade; that on July 1, 1952, its selling agent, one Fred Weinblatt, called upon Mauer at the latter's business office and informed him that he was the agent of the defendant and had a fabric which Mauer might be interested in; that he gave Mauer an exact description of the fabric and showed him samples of it; that he told Mauer his employer had been theretofore engaged primarily in selling said fabrics to the drapery trade; that he hoped the fabric would be suitable for dresses; that it had not up to that time been used commercially for dresses but that one of the secretaries of his employer had made dresses, blouses and skirts from the fabric and had washed and worn them for a period of four months; that he, Weinblatt, had made certain tests of the fabric at his home to determine its seam strength, its washability, and shrinkage control; that Mauer examined the samples of the fabric displayed by Weinblatt and believed it could be used very properly in dresses; that he thereupon on July 2, 1952 purchased 8 yards of said fabric as samples in behalf of the plaintiff to be delivered to it within one week thereafter.

The evidence further establishes that the defendant filled this order as directed. The fabric was received by Herbert C. Lang who was then the superintendent of plaintiff's factory. Mr. Lang testi-fied that no letter accompanied the samples; that he had been engaged in the manufacture of dresses for more than twenty-two years, and was in charge of all manufacturing operations in 1952; that the plaintiff then employed designers and fitters; that his firm received samples from many manufacturers of fabrics for acceptance or rejection; that if a fabric presented possibilities of use he turned it over to his designers for their study and opinion as to its qualities as dress material; that in this case, following customary procedure, the fabric was submitted by him to his designers who approved it; that he then made certain tests of the fabric to determine its seam strength, freedom from slippage and shrinkage control; that after these tests he concluded the material was suitable for dresses and that two were made from the samples which proved to be very satisfactory; that after a conference between himself and his staff it was concluded to utilize the fabric for dresses and that on July 28, 1952 an initial order for 600 yards of the fabric was placed by the plaintiff through its representative Mauer; that dresses for display by its salesmen were then made from this initial order; that the plaintiff purchased a total of 15,873⅝ yards of the fabric from the defendant under orders placed with it up to February 1953; that complaints as to the wearing quality of the dresses were first received in March 1953, and that as a result of these complaints of poor wearing quality plaintiff was obliged to refund, or give full credit for the entire purchase price of 288 dresses and for one-half of the purchase price of 25 dresses amounting to $5,070.63. He testified that the plaintiff manufactured 4,500 dresses from the total yardage purchased by it, and expressed the opinion that the poor wearing quality of the dresses was due to the fact that the silk warp of the fabric was too weak for the filler, and consequently the fabric had insufficient abrasive resistance for use in dresses.

Under cross-examination he testified that he had never had any contact with

the defendant prior to the receipt of the original samples of 8 yards; that he had never heard of it or of its salesman, Weinblatt; that he examined the material, tested it for strength, shrinkage and slippage; that after his tests and seeing the first two dresses made from it on models he decided the fabric was suitable for dresses and placed the initial order; that his decision to place this and subsequent orders was not the result of any representations by the defendant or its agent; that he was familiar with the construction of the fabric, and knew that it was made of silk and rayon and assumed it would wear well and did not claim that the fabrics purchased by the plaintiff commencing on July 28, 1952, did not correspond with the samples originally submitted to him under the order of July 1, 1952.

In support of its claim the plaintiff produced an expert from the U. S. Testing Co., Inc. He testified that he had tested certain damaged ladies suits which had been returned to the plaintiff for credit; that the damages therein were the result of poor resistance to abrasion incident to normal wear and that this poor resistance was due to the construction of the cloth, i. e., the use therein of a light weight silk warp. Under cross-examination he testified that there was nothing wrong with the defendant's manufacturing process or the quality of the materials it used and declined to give an opinion whether the defendant's fabric was of first or second quality or of any other quality.

Additional testimony was presented by the defendant to show that the silk employed in the construction of its fabric was of the best quality obtainable and that one of the secretaries employed by the defendant had made blouses, dresses and skirts from the fabric as stated by Weinblatt.

At the outset it may be observed that there was no formal contract between the parties, as alleged by the plaintiff, under which the defendant undertook to manufacture fabric for the plaintiff. However, no point was made of this fact by the defendant and the case was tried and submitted for determination of the plaintiff's claim for damages for alleged breach of warranty involved in each of said separate sales.

While the allegations of the complaint are not as precise as they might be as to the nature of the warranty for the alleged breach of which the plaintiff seeks damages, during the trial the plaintiff made it plain it seeks damages for the breach of both an express and implied warranty by the defendant that the fabric sold by it to the plaintiff was fit for the manufacture of the dresses.

The only testimony offered by the plaintiff as to any express warranty by the defendant was that of Mauer. After a careful consideration of his testimony and all reasonable inferences to be drawn from it, I am satisfied that there was no express warranty by the defendant's agent that its fabric would be fit for manufacturing dresses.

There remains, however, the question—was there an implied warranty by the defendant that its fabric would be fit for such purpose? The sales herein involved are governed by the Uniform Sales Act which appears as Chapter 459 of the General Laws of Rhode Island, Revision of 1938. The pertinent provision thereof is the following:

"§ 15. Subject to the provisions of this title and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Under this section an implied warranty of the fitness for a particular pur-

pose of the goods sold attaches where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill and judgment. The basis of this implied warranty in a sale is justifiable reliance on the skill or judgment of the seller as shown by the circumstances of the particular transaction or transactions. Ford v. Waldorf System, Inc., 57 R.I. 131, 188 A. 633; Lepore v. Fuscellaro, 73 R.I. 467, 57 A. 2d 442; The St. S. Angelo Toso, 3 Cir., 271 F. 245; Barrett Co. v. Panther Rubber Mfg. Co., 1 Cir., 24 F.2d 329; Giant Mfg. Co. v. Yates-American Mach. Co., 8 Cir., 111 F.2d 360; Maryland Cas. Co. v. Independent Metal Products Co., 8 Cir., 203 F.2d 838; 77 C.J.S., Sales, § 325(b), p. 1180.

In the present case it is clear that the seller was fully aware of the particular purpose for which the buyer required fabrics. The defendant's agent approached the consultant and buyer of materials employed by the plaintiff to determine if defendant's fabric was suitable for the dress manufacturing trade. There is no doubt that the first of the statutory essentials for the existence of an implied warranty of fitness for a particular purpose has been established in this case, that is, knowledge by the defendant of the intended purpose for which the fabric was to be used. The second statutory essential for this implied warranty is that the plaintiff relied justifiably upon the defendant's skill and judgment in selecting and using the fabric.

■ The burden of proving its justifiable reliance by a fair preponderance of the evidence rested upon the plaintiff. In my opinion it has failed to sustain this burden. On the contrary, I find an utter lack of proof of reliance by the plaintiff on the defendant's skill and judgment. From the beginning plaintiff's consultant and buyer of materials with many years of experience in the dress manufacturing field and presumably familiar with the requirements for

consumer wear was advised that the defendant had had no experience in manufacturing fabrics for the dress trade and that no such commercial use had previously been made of the fabric shown to him. He was fully advised of the extent and nature of the tests made by defendant's agent. Relying obviously on his own judgment he purchased the initial samples and forwarded them to the plaintiff without any information whatever as to the defendant's previous experience or knowledge of the requirements of the dress trade.

After receipt of these samples plaintiff's factory superintendent and its staff examined the fabric, conducted the tests they desired to conduct and concluded the fabric was suitable for its purposes. The factory superintendent disavowed any knowledge of the defendant and disclaimed ever having had any previous dealings with it. He insisted he did not decide to select and use defendant's fabric as a result of any representations made by the defendant or its agent. His decision to select and use the defendant's fabric was the result of his own judgment and experience and that of his staff. He knew the construction of the fabric when he made this decision. It is probable that he assumed that the fabric possessed an abrasive resistance sufficient to withstand ordinary consumer wear. But in any event, it is clear to me that he relied upon his own and his staff's collective judgment and experience and did not rely on the skill and judgment of the defendant. In the absence of proof of such reliance the requirements of the statute for a warranty of fitness for a particular purpose by implication have not been satisfied by the plaintiff. I find there was no implied warranty of reasonable fitness for the plaintiff's particular purpose by the defendant in this case.

■ In his argument counsel for the plaintiff contended that the plaintiff is in any event entitled to recover damages for breach of an implied warranty that the defendant's fabric would be of merchantable quality. Assuming but with-

ont deciding the sufficiency of the allegations of the plaintiff's complaint to permit a recovery of damages on this basis I am of the opinion that this contention is without merit. The plaintiff's expert evidence was to the effect that there was nothing wrong in the defendant's manufacturing process. The silk yarn used in the manufacture of defendant's fabric was of the best quality obtainable. There was no evidence that the quality of the fabric was other than first quality. The fact that it did not prove reasonably fit for the plaintiff's particular purposes does not establish in my mind that it was not of merchantable quality.

In conclusion, I find that there was neither an express nor an implied warranty of fitness for a particular purpose for the breach of which the plaintiff is entitled to recover damages.

Judgment shall be entered for the defendant.