LEWIS *v.* ROESCHER. :

4-4422

Opinion delivered November 16, 1936.

*Tom W. Campbell, Fred A. Isgrig, Harry Robinson* and *Joe B. Norbury,* for appellant.

*Robert S. McGregor* and *W. W. Sharp,* for appellee.

MEHAFFY, J. The appellant, Wilhelmina Lewis, executrix of the estate of M. M. Lewis, deceased, began this action against Gennie A. Roescher, who owned and operated the Rusher Hotel at Brinkley, Arkansas. There are two counts in the complaint. The first count alleges that appellee furnished M. M. Lewis with unwholesome, deleterious, tainted and poisonous food and drink. M. M. Lewis was a railroad trainman in the employ of the Rock Island Railroad and worked upon said road between Little Rock and Brinkley. At the time of his death, and for several years prior thereto, the appellee had owned and operated the Rusher Hotel and furnished to said Lewis and other employees, and to the public generally, accommodations including rooms, beds and food. On the evening of August 2, 1933, Lewis went into one of the dining rooms owned and operated by the appellee in connection with her said hotel, and bought certain food; a piece of pie and a glass of milk, and then

and there drank said milk and ate said pie. He had no personal knowledge of the quality of the food. The appellee and her employees sold to Lewis the pie and milk, and knew that he was buying it for food to be consumed immediately and that appellee impliedly warranted that said food was wholesome and harmless and suitable to be used as food and drink. The pie and milk were unwholesome and unfit to be used for food and drink and were deleterious, tainted, and poisonous; that the appellee breached her implied warranty that the food was wholesome and fit for human consumption. The eating of said pie and drinking of said milk caused Lewis to suffer a severe attack of ptomaine poisoning, and to become and be violently ill, suffer great and excruciating physical pain and mental anguish for a period of more than forty hours, and caused the death of said Lewis on August 4, 1933.

The second count in appellant's complaint stated that Lewis contracted for a room which was equipped with telephone, and said telephone being connected with the office of the hotel, and he became desperately sick, so ill that he was unable to leave his room to obtain the services of a physician, and he attempted to communicate his condition to appellee's clerk by telephone; that said telephone was so defective that his calls were not communicated or appellee's clerk was inattentive to said calls. He made repeated efforts to telephone throughout the night, but was unable to get any response, and was compelled to suffer alone and to vomit excessively throughout the night, and finally in the morning obtained the services of a physician. Appellee breached her contract in failing to furnish facilities for communicating his illness, thus depriving him of obtaining the services of a physician, which intensified and aggravated his physical pain and mental anguish. Appellant sues for damages in the sum of $30,000.

Appellee filed a demurrer to the complaint which was sustained by the court, and the complaint and cause of action were dismissed. The case is here on appeal.

The question in this case is: Did the complaint state a cause of action? If there was an implied warranty,

the complaint is sufficient. If appellee would be liable for negligence only, and there was no implied warranty, the complaint would not be sufficient, because the right to recover is based solely on an implied warranty and there is no allegation of negligence.

Appellant first contends that the appellee breached her contract to furnish Lewis with telephone communication. Appellant, however, does not call attention to any authority to support his contention, and we have been unable to find any.

The appellee was under no duty to furnish Lewis with a telephone in his room, and would not be liable because the telephone furnished was defective, or because he was unable to get communication with the clerk. Special damages claimed because of the failure to furnish telephone connection could only be recovered where the appellee had knowledge of the circumstances and conditions. There was no implied warranty that Lewis would be furnished with telephone service, and there was no allegation in the complaint that the appellee had knowledge of the fact that the telephone was defective. There is no allegation that appellee had knowledge that Lewis was either sick or that he was likely to become sick and suffer.

This court said: "Even if the negligence of the operator in failing to respond to appellee's call could be said to have been the proximate cause of his injury, resulting from exertion and exposure in walking uptown to the central office, appellant is not liable, for the reason that it had no notice of the special circumstances out of which the damages might arise." *Southern Tel. Co. v. King*, 103 Ark. 160, 146 S. W. 489, 30 L. R. A. (N. S.) 402, Ann. Cas. 1914B, 780.

In this case appellee had no notice, so far as the allegations of the complaint are concerned, either that the telephone was defective or that the said Lewis was sick, no notice of any special damages at all. *Southwestern Bell Tel. Co. v. Carter*, 181 Ark. 209, 25 S. W. (2d) 448; *Barrett v. New Eng. Telephone & Telegraph Co.*, 80 N. H. 354, 117 Atl. 264, 23 A. L. R. 947.

Appellee, on the question of implied warranty that the food was fit for human consumption, calls attention first to the *Great Atlantic & Pacific Tea Co.* v. *Gwilliams*, 189 Ark. 1037, 76 S. W. (2d) 65. That case was not based on implied warranty, but on negligence, and in that case the court said: "The duty which a retail seller of food for immediate consumption owes to his customers is succinctly and correctly stated in R. C. L. as follows: 'Persons who engage in the business of furnishing food for consumption for man are bound to exercise care and prudence respecting the fitness of the article furnished, and they may be held liable in damages if, by reason of any negligence on their part, corrupt or unwholesome provisions are sold and persons are made ill thereby.'" The court cites 11 R. C. L. 1118.

The section immediately following the one cited from R. C. L. reads as follows: "In an ordinary sale of goods the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands, according to the assertion of many courts, an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it is purchased." 11 R. C. L. 1119.

It is further stated in the same section: "The principle invoked is the general rule of law of sales which declares that where the buyer orders goods to be supplied, and trusts to the judgment of the seller to select those which shall be applicable for the purpose for which they are ordered, there is an implied warranty that they shall be reasonably fit for that purpose." In the case of *Great Atlantic & Pacific Tea Co.* v. *Gwilliams, supra,* there was a sale by a retail merchant in the ordinary way.

When one enters the dining room of a hotel or restaurant and orders food for immediate consumption, he of course has no opportunity to inspect, and must trust to

the seller, and the seller. impliedly warrants. that the food is wholesome and fit for human consumption.

Appellee calls attention to many authorities which we do not discuss because the authorities are in hopeless conflict on this question. In one of the cases, cited and relied on by appellee, and a recent case, decided December 21, 1934, the court said: "Whether there is an implied warranty of fitness and quality where for a consideration food is prepared and served to a customer to be consumed on the premises from the dishes and by means of the utensils of the furnisher, there is an irreconcilable conflict of authority." *F. W. Woolworth Co.* v. *Wilson,* 74 Fed. (2d) 439, 98 A. L. R. 681.

This court has said: "In the sale of provisions by one dealer to another in the course of general commercial transactions, the maxim *caveat emptor* applies, and there is no implied warranty or representation of quality or fitness; but when articles of human food are sold to the consumer for immediate use, there is an implied warranty or representation that they are sound and fit for food." *Nelson* v. *Armour Packing Co.,* 76 Ark. 352, 90 S. W. 288, 6 Ann. Cas. 237.

This court expressly approved the rule announced in 11 R. C. L. 1119, above quoted, and stated that this doctrine had been approved in *Nelson* v. *Armour Packing Co., supra; Heinemann* v. *Barfield,* 136 Ark. 500, 207 S. W. 62.

While the authorities are in hopeless conflict, yet it is the established rule of this court that articles of food sold for immediate consumption are impliedly warranted to be sound and fit for the use for which it was purchased. We do not deem it necessary to discuss the other authorities, but approve the rule announced in the cases above cited.

The trial court, therefore, erred in sustaining the demurrer to the complaint, and the judgment of the circuit court is reversed, and the cause is remanded with directions to overrule the demurrer to the complaint with reference to the food.

McHANEY, J., dissents.