SAMUEL B. FORD *vs.* WALDORF SYSTEM, INC.

DECEMBER 21, 1936

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

132

CAPOTOSTO, J. This case is before us on a certification by the Superior Court of questions of doubt and importance, after a decision by that court sustaining a substantial demurrer to the declaration. The plaintiff sued in assumpsit for breach of an implied warranty for injuries claimed to have been suffered by him from swallowing a piece of wood in some beans that he bought and ate at the defendant's restaurant in the City of Providence.

The declaration alleges a sale and that the defendant, a restaurant keeper, in offering the beans for sale, impliedly warranted to its customers that the beans were free from foreign substances and fit for human consumption; that the plaintiff relied on this warranty; that the beans were not as represented and that he was injured by reason of the defendant's misrepresentation. Actual and consequential damages are claimed by the plaintiff. The defendant demurred to this declaration on the ground that it set out "no cause of action in assumpsit against the defendant." The trial justice sustained the demurrer, but, considering the issue of such doubt and importance that it should be determined by this court before further proceedings, he certified to us the following questions under the provisions of General Laws, 1923, Chapter 348, Sec. 5: "1. May an action in assumpsit be maintained for breach of an implied warranty of the quality or fitness of food served by a restaurant keeper? 2. If such an action may be maintained, what is the measure of damages?"

This is the first time these questions have been presented to this court. Heretofore, damages from a restaurant keeper for unwholesome food have been sought, uniformly and to the apparent satisfaction of our bar, in an action of trespass on the case for negligence. The instant case reflects the influence of the decisions in similar cases in

other States. Our view of these decisions shows a square conflict between courts of last resort and a general tendency of recent years, in the jurisdictions where the question had not previously been decided by such courts, in favor of an action in assumpsit for breach of implied warranty. The courts that deny the right to resort to this form of action proceed either on the theory that the title to the food served by the restaurant keeper never passes to the customer and that the transaction is only a furnishing of service—*Merrill* v. *Hodson,* 88 Conn. 314—or on the public policy that should now govern in these cases. *Valeri* v. *Pullman Co.,* 218 Fed. 519. The opposite view is predicated upon the breach by a restaurant keeper of a warranty implied in fact from the circumstances of the transaction itself. *Friend* v. *Childs Dining Hall Co.,* 231 Mass. 65; *Temple* v. *Keeler,* 238 N. Y. 344. The former view seems to have resulted in part from the application of the law of innkeepers to a restaurant keeper under modern conditions and in part from a disinclination to impose upon him a liability akin to that of an insurer. In the former, there is a disregard of the conditions prevailing in restaurants as generally conducted at the present time, and in the latter, the question is determined by public policy, which is an issue primarily, at least, for the legislature and not for the court.

Innkeepers, in the true sense of that term, are rare in modern times and are progressively diminishing. In *Cromwell* v. *Stephens,* 3 Abbott's Practice, (n. s.) 26, the court, at page 36 of that opinion, defines an inn as "a house where all who conduct themselves properly, and who are able and ready to pay for their entertainment, are received, if there is accommodation for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied at a reasonable charge with their meals, their lodgings and such services and attention as are necessarily incident to the use of the house as a temporary

home." This definition of an inn concisely sets out the position of an inkeeper as stated in the early English cases, of which *Newton* v. *Trigg*, 1 Salk. 109, is an example. There is a wide difference between supplying food to a guest at a place conducted in this manner, and supplying food to a customer of a restaurant as that business is carried on under present-day conditions. In olden times, an inn was a temporary home for the guest, who was satisfied to accept whatever fare the innkeeper supplied him with; now, a customer goes to a restaurant only to satisfy his immediate need of food, and he, rather than the restaurant keeper, selects the particular food he wants at a price fixed by the restaurant keeper for that food.

It appears that at common law an innkeeper, when acting strictly as an innkeeper, was not "using the trade of merchandise, by way of bargaining . . . or seeking his . . . living by buying and selling" so as to bring him within this language of the bankruptcy statute of 21 Jac. I, C. 19 (1623). But the case of *Patman* v. *Vaughan*, 1 Term Rep. K. B. 572, decided in 1787, held that an innkeeper, who sold liquors to anyone that applied, whether a guest or not, was a trader within the meaning of that law. Even in this early case, the court distinguishes between an innkeeper, as such, and a person who, while an innkeeper, also assumed the position of a victualer or "publican", by selling, at a stated price, specific food or drink as ordered by a guest. The force of this original distinction is greatly intensified in modern times, when the innkeeper, in the true meaning of that word, is fast disappearing. The English victualer or "publican" is the legal ancestor of the modern restaurant keeper, who trades in prepared foods at the selection of the customer and for stated prices.

In order to make clear what we conceive as the real basis for allowing an action in assumpsit for breach of an implied warranty in this class of cases, we must again refer briefly to the early common law. Ancient criminal statutes, in England, which continued in force until specifically

repealed in 1844 by 7 & 8 Vict., Chap. XXIV, imposed an absolute duty upon victualers to sell only food which was wholesome.. A violation of this duty gave an individual, who was injured thereby, the right to recover damages in an action of the case for deceit by the "common custom of the realm". Melick, Sale of Food and Drink, note 3 at page 7, (1936). During this period, the remedy for breach of warranty was also in case for deceit, where no scienter need be alleged or proved. *Williamson* v. *Allison*, 2 East's Rep. 445; *Burnby* v. *Bollett*, 16 M. & W. 644. This remains true even at the present time. *Piche* v. *Robbins*, 24 R. I. 325, and cases cited. 1 Williston on Sales, (2d ed.), 374.

The case of *Stuart* v. *Wilkins*, 1 Doug. 18 (1787), is one of the earliest English decisions that allows an action in assumpsit for the breach of an express warranty. This new remedy was soon extended to include an implied warranty, which is a promise implied, in a contract, from the very circumstances of the transaction. Ames, in his History of Assumpsit, 2 H. L. R. 1, at page 15, says that by a process of natural transition the action of tort for breach of an express or implied promise came to be regarded as an action arising in contract, and the damages began to be assessed as compensation for the failure to obtain the thing promised rather than as reimbursement of the loss of the thing given for the promise.

The English Sales Act, 56 and 57 Vict. Chap. 71, was adopted in 1893. The Uniform Sales Act, which is substantially the same as the English statute, was adopted in this State by the enactment of Public Laws 1908, Chap. 1548, and now appears in General Laws 1923 as Title XXX, Chaps. 305 to 310, inclusive. The object in both instances was to restate in simple terms the existing law governing the sale of goods and not to reform or revise that law. There is nothing in either of these acts that excepts a sale of food from its provisions, where the circumstances surrounding the transaction satisfy the prin-

ciples of the law of sales. Under Chap. 305, Sec. 15 of our Sales Act, an implied warranty of the quality or fitness of the goods sold attaches "where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment." The basis of implied warranty in a sale is justifiable reliance on the judgment or skill of the warrantor as shown by the circumstances of a particular transaction. 1 Williston on Sales, (2d ed.), 446, 477. The word "goods" is a comprehensive term. It is defined in Chap. 310, Sec. 6, Par. 1 of the Sales Act to include "all chattels personal other than things in action and money." The definition of the term "quality of goods" in that same paragraph includes "their state or condition." Food offered for sale by a restaurant keeper falls squarely within these definitions.

The relation between a restaurant keeper and a customer originates in contract. By selecting and ordering food, the customer makes known to the restaurant keeper not only what food he wants but also that he expects to receive food fit for human consumption. An inspection of the food by the customer is generally impractical and, even if it were inspected, it would not reveal latent defects. The customer must of necessity rely upon the skill and judgment of the restaurant keeper to furnish him for a stated price the kind of food that he orders and expects to receive. The warranty that the restaurant keeper will furnish the customer with food fit for human consumption is implied in fact from the very nature of the contract.

We believe that, both at common law and under the Sales Act, the furnishing of food by a restaurant keeper under modern conditions, at least where the customer orders the kinds of food desired and the prices are fixed, is a sale with an implied warranty of quality as to the wholesomeness of the food. We further find no reason to differentiate, in this respect, between a customer, who, as frequently happens, buys food to consume elsewhere, and

one who eats similar food in the restaurant, even though some service is furnished with it. It seems to us quite inconsistent to say that there is a sale of the food in the former instance and that there is no such sale but only a furnishing of service in the latter. The essence of the transaction in both instances is the quality and fitness of the food rather than the place where the food is to be eaten. Our answer to the first question certified to us is, therefore, in the affirmative.

In this class of cases, a customer who sustains damages by reason of the unfitness of the food may now elect to follow our heretofore uniform practice with its well-defined boundaries and bring an action in trespass on the case for negligence—*Chisholm* v. *The Kresge Co.*, 55 R. I. 422—or he may sue in assumpsit for breach of an implied warranty of quality or fitness of the food for human consumption, in which case he must establish his claim as to liability and damages in accordance with the rules applicable in actions of contract. We do not deem it proper that we should be influenced, in arriving at our decision in the instant case, as the defendant suggests we should be, by any fear that a decision in favor of the plaintiff will furnish a greater opportunity for the prosecution of unfounded claims. We have confidence that the integrity of our bar and the sound judgment of our trial courts will obviate any such result.

The second question, inquiring as to the measure of damages if an action in assumpsit may be brought in this class of cases, is improperly certified. There is nothing in our laws or practice to require from us an advisory ruling on a question which has not yet been made an issue in the case on the record and which may or may not later become such an issue. The sole question presented to the court by the defendant's demurrer was whether an action in assumpsit for breach of an implied warranty of the quality or fitness of food can be maintained by a customer who is served unwholesome food by a restaurant keeper and suf-

138

fers damages in consequence. In *Murray* v. *Taylor*, 43 R. I. 5, this court clearly stated that a question of law which has not been actually brought before the Superior Court for judicial determination cannot be certified under G. L. 1909, Chap. 298, Sec. 5, now G. L. 1923, Chap. 348, Sec. 5. The rule governing the certification of a question of law under Sec. 5 has been fully discussed and stated in our cases and, therefore, need not be repeated here. *Murray* v. *Taylor, supra; Tillinghast* v. *Johnson*, 34 R. I. 136, 139; *Fletcher* v. *Board of Aldermen*, 33 R. I. 388; *State* v. *Karagavoorian*, 32 R. I. 477, 484.

We appreciate the fact that frequently a case in a trial court involves a troublesome question of law, which may later be presented to such court for decision, and that such court may wish to have such question determined by this court before any further proceedings are taken in the case; but such a question should not be certified to us under that section merely because it appears difficult and may arise later in the case. Frequently the difficulty is removed by deliberate examination or the question may not arise at all. For these reasons, we hold that the second question was improperly certified.

Of the two questions certified to us, we answer the first in the affirmative and decline to answer the second.

The papers in the case, with our decision certified thereon, are ordered to be sent back to the Superior Court for further proceedings.

*Maurice W. Hendel,* for plaintiff.

*Clifford A. Kingsley, Francis V. Reynolds,* for defendant.