FRANKE'S, INC., *v.* WALLACE.

4-9564                                                            242 S. W. 2d 968

Opinion delivered October 29, 1951.

---

468

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Gentry, Tisdale & Shamburger,* for appellee.

MINOR W. MILLWEE, Justice. This is an action by appellee, Mrs. Nellie W. Wallace, in which she recovered judgment for $750 against appellant, Franke's, Inc., on account of illness and injuries allegedly caused by having eaten food that was unwholesome and unfit for human consumption at appellant's cafeteria in Little Rock.

The verdict and judgment are challenged on the sole ground that the trial court erred in refusing to direct a verdict for appellant because of the insufficiency of the evidence. More specifically, appellant says there is a complete absence of any proof that the food sold by it to appellee was unwholesome or deleterious.

There is little dispute in the evidence which, viewed in the light most favorable to appellee, is substantially as follows: On Easter Sunday in 1949, appellee ate her usual breakfast of oatmeal, toast and coffee about 5:30 a. m. She attended church with her niece and nephew who lived with, and were reared by, appellee and her husband. The three ate lunch at appellant's cafeteria about 1 p. m. They had the same food to eat except that appellee and her nephew had boiled custard, while appellee's niece had pie, for dessert. They went from the cafeteria to a movie where appellee became nauseated shortly before 4 p. m. and began regurgitating the custard which had a very offensive taste and odor. When the three arrived home about 4 p. m. appellee and her nephew became violently ill and began vomiting and purging.

The family physician, Dr. N. F. Weny, whose qualifications were admitted by appellant, was summoned. He described appellee's condition upon arrival as follows: "Mrs. Wallace was very acutely ill, she was suffering from violent vomiting, purging and cramping in

the abdomen and shock, had a rapid pulse, blood pressure was low, she was very pallid." Appellee's nephew was found in the same condition. Dr. Weny diagnosed appellee's trouble as acute food poisoning and treated her for that ailment. Sedatives and a stimulant were administered to relieve pain and combat shock. Upon a second visit the next day Dr. Weny placed appellee and her nephew on a liquid diet and had other medicine sent out from a drug store. Appellee remained in bed for a week and was unable to perform her customary household duties for a month. She later suffered from a spastic colon which might or might not have been caused by the food poisoning. Dr. Weny had given appellee a thorough check-up a week or two before Easter Sunday and found her in excellent physical condition.

On cross-examination Dr. Weny stated that the medical term for appellee's illness is acute gastroenteritis, the most common cause of which is food poisoning; that gastroenteritis could be caused by epidemic virus in which there might be a little vomiting and purging, but not of the severe type suffered by appellee. While he diagnosed appellee's trouble as acute food poisoning and treated her for that trouble, he stated that no one could say positively that appellee was poisoned by eating bad food unless "they saw her eat it or tested it out, that has to be assumed."

Appellee made complaint to appellant's president. She testified that about a week after she became ill a Mr. Jessie, who stated that he represented appellant, called upon her. After identifying the time, place and persons present in response to appellant's objection, appellee was asked to relate the conversation and stated that Jessie asked her if she was ready to settle. Appellant's objection to this testimony was promptly sustained and the court admonished the jury not to consider any testimony about a settlement or compromise. Appellee was then permitted to testify, without objection, that Jessie told her that three other people eating at appellant's cafeteria on the same day had also suffered from food poisoning. Appellee ate nothing on the day in ques-

tion other than breakfast at home and the lunch at appellant's cafeteria. She had previously eaten boiled custard in the cafeteria without ill effects and was not allergic to the custard or any other food.

H. R. Lewis, vice-president of appellant in charge of cafeterias, testified that he was in the cafeteria about an hour in the morning on the day in question. He named the ingredients and described the method usually employed in preparing and serving boiled custard. He stated that normally three gallons of custard was prepared on Sunday which would furnish 102 four-ounce servings and that any custard left over was thrown away at the end of the day. He did not see the custard in question prepared and no record was kept of the number of servings sold on that day. He did not know whether any custard was left over either on the Sunday in question or the day before. He did not send anyone to see appellee, but was not in charge of investigating complaints and did not receive any other reports of complaints about the custard in question. Appellant's president informed him of appellee's complaint which was handled in accordance with their normal procedure in such cases.

This court is committed to the rule that when articles of food are sold to the consumer for immediate use, or by one engaged in the business of serving food for immediate consumption on the premises, there is an implied warranty that the food is wholesome and fit for human consumption and the seller is liable upon the breach of such warranty, without proof of negligence, to a consumer injured by eating deleterious food. *Nelson* v. *Armour Packing Co.*, 76 Ark. 352, 90 S. W. 288, 6 Ann. Cas. 237; *Lewis* v. *Roescher*, 193 Ark. 161, 98 S. W. 2d 956. While this was formerly the minority rule, it is now supported by a majority of the jurisdictions in which the question has arisen. See 1951 Cum. Supp. to 22 Am. Jur., Food, § 101; Anno. 7 A. L. R. 2d 1032.

The instant case was tried on the implied warranty theory. Appellant concedes this to be the correct rule,

but says that the instant case is identical with, and controlled by, the decision of this court in *Franke's, Inc.* v. *Bennett,* 201 Ark. 649, 146 S. W. 2d 163, where the implied warranty rule was recognized but recovery denied on the particular facts. In the opinion by a divided court it was there said: "It is true, as argued by learned counsel for appellee, that there is an implied warranty of fitness for human consumption and wholesomeness, by the owner of an eating place to the customer, of food purchased therein for immediate consumption. *Heinemann* v. *Barfield,* 136 Ark. 500, 207 S. W. 62; *Safeway Stores* v. *Ingram,* 185 Ark. 1175, 51 S. W. 2d 985; *Lewis* v. *Roescher,* 193 Ark. 161, 98 S. W. 2d 956. But this rule does not dispense with the necessity of proof that the food so sold is deleterious or unwholesome." It was then held that the fact of illness of the plaintiff after eating at defendant's restaurant is insufficient of itself to establish liability on the defendant, but that the proof must further show that the particular food consumed was in fact unwholesome and unfit for human consumption; and that the plaintiff in that case had failed to meet this burden.

In the Bennett case plaintiff's illness was alleged to have been caused by eating sea scallops at appellant's cafeteria in Hot Springs, Arkansas. She had never eaten scallops before and another who ate of the same scallops at her table made no complaint. There the undisputed proof showed that every precaution was taken in purchasing, shipping, and the storage and preparation of the scallops in question; that thirty-six servings were prepared under proper sanitary conditions and served to thirty-six patrons, including the plaintiff, on the same day; that no complaint was received from any of the other thirty-five patrons who ate of said scallops, and four of those testified in the case. It was there said that the fact that thirty-five other persons partook of the scallops without injury was a strong circumstance of purity. The court also observed that the plaintiff might have been allergic to the scallops, so that they would make her ill, even though they were entirely wholesome.

The factual differences between the Bennett case and the one at bar are apparent. In the instant case appellee's nephew, who ate of the boiled custard at the same table, did become violently ill while appellee's niece, who did not partake of the custard, did not become ill. There was also testimony, admitted without objection, to show that three other persons eating at appellant's cafeteria on the day in question suffered from food poisoning. Also, the evidence here is that appellee was not allergic to boiled custard and that her condition was not caused by an epidemic virus. In other words, the corroborating evidence in the case at bar tends to support the jury's finding that the boiled custard was in fact unwholesome while such evidence in the Bennett case had the opposite effect.

Counsel for both parties have cited and discussed cases from this and other jurisdictions in support of their respective contentions. Each of the cases cited presents a different state of facts and in none of them are the facts exactly parallel to those in the instant case. Many of these cases are collected in the Annotation in 130 A. L. R. 616. These cases hold generally that where a person, after consuming certain food, becomes afflicted with an illness of a kind generally attributable to the eating of tainted food, the contamination of the food eaten is inferable from proof of such sickness plus additional or corroborating evidence, such as that produced here, supporting this conclusion. We do not understand appellant to contend that it is essential that the fact of contamination be shown by direct testimony as distinguished from circumstantial evidence, which is generally regarded as competent to establish any given fact at issue in a civil case. 20 Am. Jur., Evidence, § 272. We conclude that the evidence here is sufficient to support the jury's conclusion that the boiled custard was unwholesome and unfit for human consumption, and that the trial court did not commit error in refusing to direct a verdict for appellant.

Affirmed.

WARD, J., dissents.