GERTRUDE ZORINSKY, APPELLANT, V. THE AMERICAN LEGION, OMAHA POST NO. 1, APPELLEE.

79 N. W. 2d 172

Filed November 9, 1956. No. 34002.

Frederick M. Cassman and Abrahams & Kaslow, for appellant.

Mecham, Stoehr, Rickerson & Sodoro, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Gertrude Zorinsky, a married woman, brought this action in two causes of action against defendant, The American Legion, Omaha Post No. 1, seeking recovery of damages for personal injuries, together with assigned medical and dental expenses. Plaintiff's amended petition alleged in substance that on August 11, 1954, she was a paying dinner guest at a restaurant owned and operated by defendant; that she ordered ice cream sherbet for dessert and while partaking of same she was injured and damaged by a puncture wound in the upper gums of her mouth caused by a piece of glass concealed in the sherbet and not apparent or discernible by plaintiff, from which a painful inflammation and infection developed, ultimately causing the loss of her left and right upper incisor teeth. Plaintiff predicated liability of defendant upon allegations that general negligence and breach of implied warranty of fitness by defendant proximately caused her injuries and damages.

Defendant's answer denied generally; specifically denied that injuries suffered by plaintiff as alleged were proximately caused by any negligence of defendant; and

alleged that defendant had exercised every precaution to inspect, preserve, and maintain said ice cream in a clean, wholesome condition so far as the character and nature of such dessert permitted without destroying its function and the purpose of its manufacture, and if it contained any deleterious substance at the time same was served to plaintiff, which defendant denied, it was not therein by reason of any negligence of defendant. The cause was tried as if plaintiff's reply were a general denial.

At conclusion of plaintiff's evidence, and again at conclusion of all the evidence, defendant moved for directed verdict upon the ground that plaintiff had failed to adduce sufficient competent evidence to sustain a charge of actionable negligence. Such motions were overruled and the trial court, by giving instruction No. 5 and related instructions, submitted the cause to the jury, thereby limiting its consideration solely to alleged negligence, and specifically refusing as a matter of law to submit the issue of implied warranty of fitness.

The jury returned a verdict for defendant and judgment was rendered thereon. Plaintiff's motion for new trial was overruled, and she appealed, assigning and arguing in substance that the trial court: (1) Erred in so giving instruction No. 5; (2) erred in refusing to appropriately submit plaintiff's theory of implied warranty although requested so to do; and (3) erred in overruling plaintiff's motion for new trial. We sustain plaintiff's assignments.

At the outset it should be noted defendant argued, citing authorities, that the judgment should be affirmed in any event: (1) Because defendant, a restaurateur, would as a matter of law not be liable to plaintiff upon any theory of implied warranty as alleged by plaintiff; and (2) that although defendant would be liable to plaintiff for actionable negligence proximately causing her alleged injuries and damages if proven, she failed to establish the same by competent evidence. We con-

clude that defendant's first contention has no merit.

With regard to defendant's second contention, the record now before us does disclose that plaintiff failed to adduce competent evidence which would sustain a charge of actionable negligence by defendant, and if a new trial is had and pertinent evidence with relation to negligence is substantially the same as now appearing in this record, then the issue of negligence should not be submitted to the jury.

On the other hand, plaintiff argued, citing numerous applicable and controlling authorities, that even in the absence of sufficient proof of actionable negligence, if plaintiff adduced competent evidence that while a paying customer of defendant, admittedly a restaurateur, she sustained injuries to her mouth and resulting damages proximately caused by the presence of glass concealed or not reasonably discernible or anticipative by plaintiff in food so served and eaten in defendant's premises, she had a submissible cause of action against defendant for breach of implied warranty that such food was wholesome and fit for human consumption and contained nothing injurious to her health and safety. We sustain that contention.

Viewed in such light, the record discloses that plaintiff pleaded, relied upon, and adduced sufficient competent evidence to support the issue of a breach of implied warranty of fitness, proximately causing injuries and damages, which required submission of that issue to the jury for its determination upon proper instructions, but the trial court failed and refused to do so. In that connection, this court reaffirmed, in McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923, that: "It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence.

"A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleading and evidence, and a failure to do so is prejudicial error." See,

also, Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749.

The record discloses that plaintiff adduced competent evidence from which the jury could reasonably have concluded as follows: On the evening of August 11, 1954, plaintiff met six of her lady club friends at defendant's restaurant. They had previously reserved a dining room table there for the purpose of having dinner together and celebrating the birthday of one of the ladies. Plaintiff was a paying customer of defendant, whose headwaiter seated the group at one long table, with plaintiff at the head and the others on either side. Such table was illuminated by one candle in the center, as were other tables in defendant's dining room. It was rather dark there. Plaintiff ordered her dinner and after eating the main course she ordered and was served ice cream sherbet for dessert. It was rather soft, and as she began to eat it a piece of glass therein suddenly inflicted a sharp puncture wound in her gums behind and to the left of her two upper central incisor teeth. Feeling the sharp pain, and scared, she reached into her mouth with two fingers and pulled out a sharp piece of glass about as wide as a toothpick and one-half inch long. Plaintiff immediately exclaimed to her friends: " 'Oh, my God! a piece of glass,' " or, " 'Oh, there is a piece of glass,' " and laid it back on the sherbet plate. Her mouth was bleeding, so she held her napkin to her mouth to stop the blood and called a waiter, who, when informed of the circumstances, immediately removed the plate to defendant's kitchen and informed defendant's headwaiter of the incident and the fact that plaintiff was bleeding. Thereafter, defendant's headwaiter came over and took plaintiff to the desk of defendant's assistant manager for consultation. Arrangements were then made whereby a husband of one of the lady club members, accompanied by one of the ladies, took plaintiff to Doctors Hospital in his car, where the house physician examined and treated her. His examination revealed a puncture wound about one-eighth of an inch

in diameter and three-eighths of an inch deep in plaintiff's upper gums, near her upper central incisor teeth. Such physician probed plaintiff's wound, treated it with antiseptic, and controlled the bleeding. Plaintiff left the hospital later that evening.

The next day, August 12, 1954, plaintiff was examined by her dental surgeon. He testified that plaintiff had been his patient both before he entered military service and since his return in June 1946, during which periods he had regularly X-rayed and cleaned her teeth, which were in excellent condition without any cavities or extractions. His examination on August 12, 1954, revealed that plaintiff's gum area back of her upper central incisor teeth was swollen, lacerated, inflamed, and painful. He treated plaintiff therefor on 16 occasions between that date and September 4, 1954, to combat inflammation and infection present in that area. Thereby plaintiff's condition was somewhat relieved, but the inflammation and infection which resulted from her injury ultimately caused deterioration and loss of bone tissue, thereby loosening her two upper incisor teeth, which about 6 months later required extraction thereof and replacement by bridge denture. The reasonable value of the services rendered by and paid to plaintiff's dental surgeon was not disputed.

An oral surgeon who examined plaintiff on behalf of defendant early in December 1954, testified as a witness for defendant. In doing so, he repeated the history given him by plaintiff with regard to the accident as substantially heretofore set forth in plaintiff's evidence. His examination found that plaintiff had an unusually clean mouth, with no evidence of healed puncture scars, but plaintiff's gum tip at the midline of the upper lingual surface was very inflamed, swollen, and tender. He also found that plaintiff's left upper central incisor tooth was tender but the right one was not, although both were equally and easily movable with bone loss about the roots. He testified that in his

opinion such condition was caused not by infection but by inflammation which resulted from constant biting trauma against plaintiff's two central incisor teeth, which carried a load of rear and side gold crowns with a bridged space-tooth attached on each side thereof, rather than by infection and inflammation resulting from plaintiff's injuries, as testified by plaintiff's dental surgeon. As we view it, such causal question was for determination by the jury.

In defense of alleged negligence, defendant also adduced evidence in substance that its ice cream and sherbet purchased by defendant in bulk containers from an outside manufacturer, was stored in a metal freezer, and dished up in glasses by a pantry girl without negligence. Further, the headwaiter and pantry girl testified that after they were informed of the incident, they examined a dish of vanilla ice cream, not sherbet, and found no glass in it. In that regard, on cross-examination, the headwaiter stated that the dish of vanilla ice cream which they examined was taken from about the center of the table and not from in front of plaintiff.

The specific issue of whether or not a restaurateur engaged in the serving of food for immediate consumption on his premises may be held liable for breach of an implied warranty of wholesomeness and fitness for human consumption of food served to a paying customer, who was injured by eating such food which was contaminated by the presence therein of a concealed or not reasonably discernible or anticipative foreign or deleterious substance, has never heretofore been passed upon by this court.

In that connection, there is a sharp conflict in the authorities. A small minority of jurisdictions still adhere to the so-called "Connecticut-New Jersy rule," that there is no implied warranty by a restaurateur of the wholesomeness and fitness of food served by him for immediate consumption on the premises, and that he is

liable only for actionable negligence in the preparation and serving thereof.

On the other hand, a large and increasing majority of courts adhere to the so-called "Massachusetts-New York rule" that a restaurateur engaged in serving food to paying guests for immediate consumption on the premises impliedly warrants that the food so served is wholesome and fit for human consumption, and is liable for injuries to such guests proximately caused by a breach thereof without proof of negligence, although he may be liable for actionable negligence if same is supported by competent evidence.

As stated in Annotation, 7 A. L. R. 2d 1029: "The reasoning underlying the Massachusetts-New York rule recognizing liability on the theory of implied warranty is that the transaction between the restaurateur and a customer is a sale, both under the Uniform Sales Act and under the common law, or is, at least, a qualified sale, in either event having a legal foundation for an implied warranty of fitness; that even if the food dispensed is said to be 'uttered,' so as not to constitute a sale, the relation between the parties is one of contract in which there is an implied term that the food and drink shall not be harmful but shall be appropriate for eating; that the customer can make no intelligent selection but, as a necessary inference from the relation of the parties, he relies upon the skill and trade wisdom of the restaurateur, who has many more facilities for ascertaining the wholesomeness or unwholesomeness of the food than are possessed by the customer, and there is no basis for an exception to the general rule of liability of a retailer in implied warranty; that the consequences resulting from the serving of unwholesome food are so dangerous to health and life that the rule is not only reasonable but essential to public safety." That statement is supported by many authorities subsequently cited, and we believe that such view is based upon better reasoning and sounder public policy.

In that connection, as said in Annotation, 7 A. L. R 2d 1032, citing and discussing many authorities from 20 jurisdictions: "The majority of the jurisdictions in which the question has arisen adhere to the view that one engaged in the business of serving food for immediate consumption on the premises impliedly warrants that the food is wholesome and fit for human consumption, and is liable, upon a breach of such warranty, without proof of negligence, to a customer injured by eating deleterious food." We adhere to that rule and apply it here. Such cited cases are too numerous to cite or discuss at length in this opinion. A few are comparable upon the facts and applicable law. These will be briefly discussed.

In Amdal v. F. W. Woolworth Co., 84 F. Supp. 657, plaintiff's petition alleged that defendant served her ice cream as a part of her lunch at its place of business in Cedar Rapids, Iowa, and that the ice cream contained a piece of broken glass which caused her serious injury. She charged defendant with negligence and with breach of implied warranty of fitness. Defendant moved to strike that portion charging a breach of implied warranty, and, in a well-reasoned opinion, citing many authorities, the court overruled defendant's motion upon the ground that warranty of fitness would be implied in connection with food served by a restaurateur, which entitled plaintiff, a patron, to maintain an action against defendant for injuries sustained while eating ice cream allegedly containing glass.

In Goetten v. Owl Drug Co., 6 Cal. 2d 683, 59 P. 2d 143, plaintiff went into defendant's place of business and ordered chow mein. As in the case at bar, it allegedly contained broken glass, and plaintiff was injured thereby while eating the chow mein purchased by defendant from an outside manufacturer. Defendant's basic contention was that it was liable only for actionable negligence and not for implied warranty of fitness. As in the case at bar, the trial court submitted the issue

to the jury only upon defendant's theory. Defendant recovered a verdict and the trial court granted a new trial from which defendant appealed. The order granting plaintiff a new trial was affirmed. After citing authorities and quoting from section 1735 of the Civil Code of California, which is comparable with section 69-415, R. R. S. 1943, of our own Uniform Sales Act, the court said: " 'Ordinarily a patron at a lunch counter makes known, at least by implication, that he desires wholesome food; he relies upon the proprietor's skill and judgment to produce food which can be eaten without deleterious effect, and there is an implied warranty under the provisions of section 1735 that the food delivered is wholesome. A person who maintains a restaurant, or lunch counter holds himself out as one who has for sale food which, so far as it is under his control, is wholesome and free from foreign substances dangerous to the human system. Patrons of such food dispensers rely upon this implied representation, for without it they would not be patrons. While there exists the action for damages where negligence of the purveyors of food can be proven, this is not the only protection afforded to their customers. * * * The case at bar was submitted to the jury under the legal theory, declared in the instructions, that unless it appeared from a preponderance of the evidence that the glass was allowed or permitted to get into the food through the negligence of the defendants, appellants here, the jury should return a verdict for the defendants. This error in excluding from the consideration of the jury the question of implied warranty—a warranty which existed regardless of whether the glass entered the food before or after it came into appellants' possession—amply justified the trial court in granting a new trial.' "

In Cushing v. Rodman, 82 F. 2d 864, 104 A. L. R. 1023, plaintiff ordered and was served coffee and a roll at defendant's lunch counter. The roll, purchased by defendant from others, contained a concealed pebble which

injured plaintiff's teeth. She sought recovery upon the theory of breach of implied warranty of fitness by defendant. Plaintiff appealed from a judgment for defendant rendered upon the theory that defendant was liable only for negligence upon which there was failure of proof. The judgment was reversed. In doing so, the court, after citing and discussing many authorities, said: "We conclude in respect of the choice of a general rule of liability that liability should not be restricted to cases of negligence only, but predicated also upon breach of an implied warranty of wholesomeness. We think such a rule much the more effective in securing the public safety, and not unduly harsh so far as the dispenser of food is concerned.

"As to the further question, ought there be an exception to this rule where the harmful article was purchased by the restaurant keeper from a reliable dealer and in a form not subject to effective inspection, without destruction of marketability: We see no basis for such an exception, either upon the ground that the rule of implied warranty is not technically applicable to such a situation, or upon the ground of undue hardship to the dispenser. As to the technical applicability of warranty: Again the customer is forced to rely upon the experience and trade wisdom of the dispenser in selecting food obtained from another, such as canned goods, or, as in the instant case, baked goods. Moreover, since liability in warranty is not predicated upon negligence but is absolute and rests in its ultimate basis in large part upon the necessity for public protection, there is no less reason for recognizing it where the dispenser is not able effectively to inspect the goods than where he is."

In the light of the record and authorities heretofore cited and discussed, we conclude that the trial court erred prejudicially in failing and refusing to appropriately submit the issue of implied warranty to the jury.

The judgment of the trial court should be and hereby

is reversed and the cause is remanded for further proceedings in accord with this opinion.

REVERSED AND REMANDED.