HOWARD SOFMAN, PLAINTIFF-RESPONDENT, v. DENHAM FOOD SERVICE, INC., DEFENDANT-APPELLANT, AND MANHATTAN PROVISION CO., INC., DEFENDANT.

Argued February 20, 1962—Decided May 7, 1962.

*Mr. Mortimer Neuman* argued the cause for appellant (*Messrs. Reid & Flaherty,* attorneys).

*Mr. Howard A. Goldberger* argued the cause for respondent (*Messrs. Goldberger & Ostrow,* attorneys).

PER CURIAM.   Plaintiff, a patron of a cafeteria concession, sued to recover for injuries caused by a deleterious substance in the food he ate in appellant's cafeteria. The complaint was in two counts. The first, in negligence, was dismissed; the second, in warranty, was upheld. After a trial without a jury in the Union County District Court, judgment was entered against Denham Food Service, defendant-appellant (hereinafter "Denham"), in the sum of $135 for special damages and $250 for pain and suffering. Manhattan Provision Co., the other defendant, was not served with process. Prior to argument in the Appellate Division on Denham's appeal, we certified the cause on our own motion.

Denham operates an employee cafeteria concession in the Saks Fifth Avenue store in Springfield, New Jersey. Plaintiff was employed by Saks and on September 23, 1958, during his lunch hour, entered Denham's cafeteria, ordered, received and paid for a frankfurter on a roll and a beverage. After paying for his food the plaintiff was free to lunch at a table provided for that purpose or to take the food and drink and go wherever he pleased inside or outside the premises. He chose to take the food and

drink to a table where he began to eat. Plaintiff alleges that when he bit into the frankfurter he struck a foreign substance, a small piece of bone or gristle which broke his tooth and caused bleeding in his mouth.

The frankfurter was an ordinary frankfurter encased in a skin. Denham purchased it in this form from Manhattan and did nothing to the frankfurter, other than grilling it in the presence of the plaintiff, before placing it in the roll and handing it over to him.

The basic question presented is whether a cafeteria operator engaged in preparing, cooking, and selling food is liable to a patron upon an implied warranty that the food is fit for human consumption.

Denham argues that the rule regarding a restaurateur's liability, as set forth in *Nisky v. Childs Co.*, 103 *N. J. L.* 464, 135 *A.* 2d 805, 50 *A. L. R.* 227 (*E. & A.* 1927), is dispositive here. There, a plaintiff sought damages for injuries caused by eating unwholesome fried oysters prepared and served in the defendant restaurant. Recovery on a theory of implied warranty of fitness for human consumption was denied.

The court in *Nisky* drew an analogy between an old English inn and a modern day restaurant. According to it, the serving of food in an inn constitutes a service and not a sale of goods. In the absence of a sale the court refused to find any implied warranty and held that a restaurateur could be liable only for negligence. In so holding it relied upon a statement attributed to counsel in *Parker v. Flint*, 12 *Mod.* 254, 88 *Eng. Rep.* 1303 (1699), that "an innkeeper * * * does not sell but utters his provisions." Also cited was the following statement by Professor Beale in his treatise, *Innkeepers and Hotels*, § 169, *p.* 117 (1906):

"As an innkeeper does not lease his room, he does not sell the food he supplies to his guests. It is his duty to supply such food as the guest needs, and the corresponding right of the guest to consume the food he needs and to take no more. Having finished his meal he has no right to take food from the table, even the

uneaten portion of the food supplied him. Nor can he claim a certain portion of the food as his own to be handed over to another in case he chooses not to consume it himself."

It further held that our Sale of Goods Act was merely declaratory of the common law and therefore did not apply to the serving of food in a public eating place. As our Legislature had not declared such transactions to be sales, the court felt that it was not privileged to incorporate service of meals into the act by judicial ruling. Moreover, it held that any modification of the common law would have to result from legislative action. Accordingly, it refused to follow *Friend v. Childs Dining Hall Co.,* 231 *Mass.* 65, 120 *N. E.* 407, 5 *A. L. R.* 1100 (*Sup. Jud. Ct.* 1918), and *Temple v. Keeler,* 238 *N. Y.* 344, 144 *N. E.* 635, 35 *A. L. R.* 920 (*Ct. App.* 1924), which held restaurant keepers liable for breach of implied warranty without first holding that the service of food was a "sale" of goods in the narrow sense.

Denham also contends that any change in the *Nisky* rule should be made by the Legislature and not by "judicial legislation" and finally that, if there is a change in the rule, the change should be given prospective effect only.

We find it unnecessary to consider the validity of *Nisky*. There the service of food in the conventional restaurant was identified with the service of food in the ancient inn. That identification has been much criticized. The question here is whether that holding should be extended into another factual situation in which the points of similarity, thought in *Nisky* to require identification with the inn, do not appear. Here we have a cafeteria in which the element of service is minimal.

We see no resemblance between the operation of a cafeteria and the operation of the ancient inn. If it be assumed the inn did not "sell" food but merely satisfied whatever might be the needs of its wayfarer guest, surely the same cannot be said of a cafeteria, at which the customer buys

and pays for the food he wants and may carry it to wherever he wishes, on or off the premises. We can see no justification for applying the innkeeper rule to a factual pattern in which the considerations underlying the innkeeper rule cannot be found.

*Nisky* may indeed be unsound on its own facts but we believe that whether it is, should be reserved for a case in which the issue must be met. The question may not arise, since the Legislature has overturned *Nisky*, as well as the underlying rule which *Nisky* applied to a restaurant, by adopting the Uniform Commercial Code, effective January 1, 1963. *N. J. S. A.* 12A:2-314(1). All that need now be decided is that the rule applicable to an innkeeper should not be applied to a cafeteria where it would be plainly a myth to say that food is not "sold," and that a refusal to go beyond the precise holding of *Nisky* is well supported by the Legislature's disapproval of the underlying concept which *Nisky* invoked. .

Accordingly, the judgment of the trial court is affirmed.

SCHETTINO, J., concurring. Although I concur in the result reached by the majority, in my view, the question presented by this case is the broad one, *i. e.*, whether a defendant engaged in the business of preparing and offering food designed primarily to be consumed on the premises is liable to a patron upon an implied warranty that the food was fit for human consumption. Because this approach would require the overruling of *Nisky*, I set forth my views in full.

In my opinion the scope of the *Nisky* decision does cover the instant factual situation. Research disclosed only two jurisdictions which have had occasion to apply the doctrine of implied warranty to food sold in a cafeteria. Neither discussed any distinction for this purpose between a cafeteria and a restaurant. *McAvin v. Morrison Cafeteria Co. of La.*, 85 *So.* 2d 63 (*La. Ct. of App.* 1956); *Franke's, Inc. v. Wallace*, 219 *Ark.* 467, 242 *S. W.* 2d 968 (*Sup. Ct.*

1951). When a person orders food in a restaurant today, he selects a listed portion for which the restaurateur has set a fixed price. Reality would be ignored if it is said that a sale is not effected, at least as to that food which the patron consumes. Thus, while a distinction can be made between a cafeteria and a traditional restaurant, for present purposes the difference is so negligible that we should face the problem four square.

There are two general lines of authority on the issue of a restaurateur's liability in implied warranty. Of those jurisdictions which have had the opportunity to pass upon the question, the numerical majority supports the view, referred to as the "Massachusetts-New York rule," that one serving food for immediate consumption on the premises impliedly warrants that the food served is wholesome and fit for human consumption and is liable for a breach of the implied warranty. The numerical minority of jurisdictions adheres to the view, designated as the "Connecticut-New Jersey rule," which is exemplified by *Nisky*.

In this State the *Nisky* view was reaffirmed in *Corin v. S. S. Kresge Co.*, 10 *N. J. Misc.* 489, 159 *A.* 799 (*Sup. Ct.* 1932), affirmed *per curiam* 110 *N. J. L.* 378 (*E. & A.* 1933). Plaintiff there was injured by a piece of broken glass in coleslaw prepared and served in a restaurant. Recovery was allowed in negligence but not on implied warranty. In *Rickner v. Ritz Restaurant Co.*, 13 *N. J. Misc.* 818, 181 *A.* 398 (*Sup. Ct.* 1935), plaintiff was injured by glass in a sandwich prepared and served in defendant's restaurant. The court said, "The liability of restaurateurs, for foreign and deleterious substances in food served to patrons, is well settled in our state. It is based, not on the theory of a warranty, but on the theory of negligence."

Other jurisdictions have reached a similar result where the restaurant customer was served: an unwholesome turkey sandwich, *Pappa v. F. W. Woolworth Co.*, 3 *Terry* 358, 42 *Del.* 358, 33 *A. 2d* 310 (*Super. Ct.* 1943); a piece of

tin in sandwich bread, *Child's Dining Hall Co. v. Swingler*, 173 *Md.* 490, 197 *A.* 105 (*Ct. App.* 1938); and a mouse in roast chicken dressing, *Kenney v. Wong Len*, 81 *N. H.* 427, 128 *A.* 343 (*Sup. Ct.* 1925). For other examples of the rule see *McCarley v. Wood Drugs, Inc.*, 228 *Ala.* 226, 153 *So.* 446 (*Sup. Ct.* 1934); *Albrecht v. Rubenstein*, 135 *Conn.* 243, 63 *A. 2d* 158, 7 *A. L. R. 2d* 1022 (*Sup. Ct. Err.* 1948); *Rowe v. Louisville & N. R. R.*, 29 *Ga. App.* 151, 113 *S. E.* 823 (*Ct. App.* 1922); *F. W. Woolworth Co. v. Wilson*, 74 *F. 2d* 439, 98 *A. L. R.* 681 (5 *Cir.* 1934); *Horn & Hardart Baking Co. v. Lieber*, 25 *F. 2d* 449 (3 *Cir.* 1928).

The Connecticut-New Jersey rule has been severely criticized, however. As already noted, the rule was based on the belief that at common law an innkeeper merely uttered his food; and therefore, by analogy, the service of food in a restaurant today does not constitute a sale. But there is considerable doubt that a rule to that effect ever existed at common law. *Dickerson, Products Liability and the Food Consumer, p.* 26 (1951).

For many years the rule prevailed in England that service of food by innkeepers and victualers was not a sale within the meaning of the bankruptcy statute. *Saunderson v. Rowles*, 4 *Burr.* 2065, 98 *Eng. Rep.* 77 (1767); *Crisp v. Pratt, Cro. Car.* 549, 79 *Eng. Rep.* 1072 (1640). The reference in *Parker v. Flint*, 12 *Mod.* 254, 88 *Eng. Rep.* 1303 (1699), was to this line of authority. Yet these cases are not really related to the question whether the service of food constitutes a sale in a sense relevant here. *Dickerson, supra,* at *p.* 162; *Perkins, Unwholesome Food as a Source of Liability*, 5 *Iowa L. Bull.* 86, 100 (1920). And there are *dicta* which may be interpreted to the effect that the service of unwholesome food would have given rise to liability for breach of warranty. *Burnby v. Bollett*, 16 *M. & W.* 644, 153 *Eng. Rep.* 1348, 1350, 1353 (1847). See 1 *Rolle's Abridgement, p.* 90, *ss.* (p), 1 and 2 (1668). (It is interesting to note that today a restaurateur in

England is held liable on the sale principle. *Lockett v. A. & M. Charles, Ltd.* [1938] 4 *All. E. R.* 170 (K. B.).)

The weakness of the *Nisky* principle is also recognized in *Prosser, Torts* § 83, at *pp.* 495–6 (*2d ed.* 1955):

"Some courts still cling to the notion, inherited from the days of innkeepers when the guest paid a lump sum for lodging, meals, and a stable for his horse, that such a service is not a sale, and so no warranty is to be implied. It is obvious that such a theory is entirely unsuited to modern restaurants, with 'orders' of definite quantity served at fixed prices; and here again the great majority of the courts have imposed strict liability upon the restaurant owner, finding that the food is sold, and that there is obvious reliance upon the seller's implied assurance."

Cases which hold a restaurateur liable, absent negligence, are founded on several theories. As noted in 2 *Harper & James, The Law of Torts, pp.* 1577–8:

"Difficulty here springs from the old notion that the innkeeper or victualer did not sell the food he served to guests, but only conferred upon them the privilege of eating it on the premises. Some courts still apply this quaint concept and find no warranty for want of a sale. Others, more realistic than antiquarian, find a sale and imply the warranty. Still others imply the warranty * * * without regard to whether or not the transaction is a sale or a mere 'utterance' of food."

The following cases are typical of holdings that a sale has been made. *Cliett v. Launderdale Biltmore Corp.,* 39 *So. 2d* 476 (*Fla. Sup. Ct.* 1949); *Vogel v. Thrifty Drug Co.,* 43 *Cal. 2d* 184, 272 *P. 2d* 1 (*Sup. Ct.* 1954); *Barfield v. F. W. Woolworth Co.,* 329 *Mass.* 641, 110 *N. E. 2d* 103 (*Sup. Jud. Ct.* 1953); *Zorinsky v. American Legion, Omaha Post No. 1,* 163 *Neb.* 212, 79 *N. W. 2d* 172 (*Sup. Ct.* 1956); *Conklin v. Hotel Waldorf Astoria Corp.,* 5 *Misc. 2d* 496, 161 *N. Y. S. 2d* 205 (*N. Y. City Ct.* 1957); *Arnaud's Restaurant, Inc. v. Cotter,* 212 *F. 2d* 883 (5 *Cir.* 1954), cert. den. 348 *U. S.* 915, 75 *S. Ct.* 295, 99 *L. Ed.* 717 (1955). And in *Ford v. Waldorf System, Inc.,* 57 *R. I.* 131, 188 *A.* 633, 636 (*Sup. Ct.* 1937), Mr. Justice Capotosto summarizes the reasons for so holding:

"We believe that, both at common law and under the Sales Act, the furnishing of food by a restaurant keeper under modern conditions, at least where the customer orders the kinds of food desired and the prices are fixed, is a sale with an implied warranty of quality as to the wholesomeness of the food. We further find no reason to differentiate, in this respect, between a customer, who, as frequently happens, buys food to consume elsewhere, and one who eats similar food in the restaurant, even though some service is furnished with it. It seems to us quite inconsistent to say that there is a sale of the food in the former instance and that there is no such sale but only a furnishing of service in the latter. The essence of the transaction in both instances is the quality and fitness of the food rather than the place where the food is to be eaten."

Upon an analysis of *Nisky* and the authorities relied upon by that court for its opinion and upon the balancing of the views of the Connecticut-New Jersey rule against the Massachusetts-New York rule, I feel that the latter is much more effective in securing the public health and safety. At the same time it is more realistic.

Plaintiff here selected and purchased his food at a counter and was free to eat wherever he might choose, either inside or outside the premises. Viewed in this light, I perceive no material difference between the instant case and those which hold that retail dealers impliedly warrant the fitness for human consumption of the food they sell for consumption off the premises. Clearly the transaction is no less a sale than that where a customer purchases a loaf of bread, *Simon v. Graham Bakery,* 17 *N. J.* 525 (1955); a can of peaches, *Griffin v. James Butler Grocery Co.,* 108 *N. J. L.* 92 (*E. & A.* 1931); cheese buns, *Duncan v. Juman,* 25 *N. J. Super.* 330 (*App. Div.* 1953); or a can of pineapple juice, *Stave v. Giant Food Arcade,* 125 *N. J. L.* 512 (*Sup. Ct.* 1940); 1 *Williston, Sales* § 242b, *p.* 640 (*rev. ed.* 1948); *Vold, Sales* § 94, *p.* 453 (*2d ed.* 1959). As noted in the majority opinion the Legislature has recognized the wisdom of treating all such situations alike by its enactment of the Uniform Commercial Code, effective January 1, 1963. *N. J. S. A.* 12A:2–314(1).

Denham also contends that if *Nisky* is to be overruled, the Legislature rather than this court should do so. Judge-made law is always subject to re-examination. *Cohen v. Kaminetsky,* 36 *N. J.* 276, 282 (1961) ; *Fernandi v. Strully,* 35 *N. J.* 434, 450 (1961), overruling *Weinstein v. Blanchard,* 109 *N. J. L.* 332 (*E. & A.* 1932) ; and Weintraub, "Judicial Legislation," 81 *N. J. L. J.* 545 (1958). See *Collopy v. Newark Eye & Ear Infirmary,* 27 *N. J.* 29, 46 (1958), overruling the long established doctrine of charitable immunity. Mr. Justice Jacobs there noted that even though judges of an earlier generation believed their decision to be a sound instrument of judicial policy in furtherance of the moral, social and economic welfare of the people, yet, "When judges of a later generation firmly reach a contrary conclusion, they must be ready to discharge their own judicial responsibilities in conformance with modern concepts and needs." Here, then, as in *Collopy,* we should declare our own overruling of *Nisky.*

Although I would hold that the transaction in issue does constitute a sale and gives rise to an implied warranty of fitness, in my opinion not all injured consumers should be limited to recovery under the intricate distinctions present in the law of sales. "[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." Traynor, J., dissenting in *Trust v. Arden Farms Co.,* 50 *Cal.* 2d 217, 324 *P.* 2d 583, 595, 81 *A. L. R.* 2d 332 (*Sup. Ct.* 1958). The possibility of application of the warranty theory to fields other than sales is explored in Farnsworth, "Implied Warranties of Quality in Non-sales Cases," 57 *Colum. L. Rev.* 653 (1957) and cases there cited; 1 *Williston, Sales, supra,* § 242b, *pp.* 640–41; Uniform Commercial Code § 2–313, comment 2 (1958 *ed.*).

With respect to Denham's assertion that any overruling of *Nisky* should be prospective as compared to retrospective, the general rule in civil cases in this State is that a change

in the law by a judicial decision is retrospective in effect. *Dalton v. St. Luke's Catholic Church*, 27 *N. J*. 22, 26 (1958); *Arrow Builders Supply Corp. v. Hudson Terrace Apts.*, 16 *N. J*. 47, 49 (1954).

I am disturbed by the possible application of a new theory of liability to other potential defendants. Nevertheless, in my opinion the effect of a decision overruling a former doctrine should be limited to prospective application only where a defendant demonstrates affirmatively that he has been prejudiced to a substantial degree by justifiable reliance upon a rule previously stated by this court. Compare *Llewellyn, The Common Law Tradition: Deciding Appeals, p*. 303 (1960), with Keeton, "Creative Continuity in the Law of Torts," 75 *Harv. L. Rev.* 463, 492 (1962). The circumstances here do not call for a departure from the general rule. Denham did not implead Manhattan, the supplier of the frankfurters, under *R. R*. 4:14–1. If it did so, it might have been held harmless. No justifiable reliance is shown. *Arrow Builders Supply Corp. v. Hudson Terrace Apts., supra*, 16 *N. J.*, at *p*. 50. See Levy, "Realist Jurisprudence and Prospective Overruling," 109 *U. Pa. L. Rev.* 1 (1960); and Note, "Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions," 60 *Harv. L. Rev.* 437, 440 (1947).

I would affirm.

HALL, J. (dissenting). While I thoroughly agree that the law in this state derived from *Nisky v. Childs Co.*, 103 *N. J. L.* 464 (*E. & A*. 1927) is unsound and deserving of correction (and I feel the philosophy of the decision would have been applied by that court to prepared food, ready to eat, served in a cafeteria or for off-premises consumption as well as to that furnished in the usual manner in a conventional restaurant), the legislature has specifically changed it since the commencement of this suit. *N. J. S. A.* 12A:2–314(1), Uniform Commercial Code, approved Novem-

ber 30, 1961. This change, like all other provisions of the far-ranging code, is effective January 1, 1963. It may well be said that the future effective date amounts to an all-inclusive legislative determination that the additional period of time should ensue so that there will be no possibility of prejudice or injury to persons affected by reason of the prior existence of contrary law. In any event, when a branch of government which has coordinate power with the judiciary to change the law does so before the courts act, it seems to me only fitting and orderly, if not imperative, that the judicial arm defer to and be controlled as to time of change by the legislative action. I would therefore reverse and direct the entry of judgment for defendant.

Justice HANEMAN joins in this opinion.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—Justices HALL and HANEMAN—2.