MARY NISKY AND SYLVESTER NISKY, APPELLANTS, v. CHILDS COMPANY, A CORPORATION, RESPONDENT.

Submitted October 29, 1926—Decided January 31, 1927.

1. Food served at a restaurant does not constitute a "sale" either at common law or under the act of 1907, page 311, entitled, "An act concerning the sale of goods and to make uniform the law relating thereto."

2. Section 15, subdivision 1 of the above act which reads: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment [whether he be the grower or manufacturer or not], there is an implied warranty that the goods shall be reasonably fit for such purpose," does not apply to food served at a restaurant, and in such case the keeper of the restaurant does not "warrant" that the food so supplied is free from deleterious or injurious substances.

3. Food served at a restaurant imposes on the restaurant keeper the duty to use reasonable care to see that the food thus furnished shall be free from injurious substances and fit for human consumption.

On appeal from the Hudson County Circuit Court.

For the appellants, *Collins & Corbin.*

For the respondent, *Walter L. Glenney.*

The opinion of the court was delivered by

LLOYD, J. The Childs Company (respondent here) operates a restaurant at 158 Market street, in the city of Newark. On the 19th of October, 1923, at the conclusion of a theatre party, Mary Nisky, one of the appellants, and two friends entered the restaurant of the respondent for the purpose of obtaining something to eat. They all ordered clam chowder. After this was eaten Mrs. Nisky ordered half a dozen oysters fried in egg and cracker crumbs, of which she ate three. When she placed the third one in her mouth it tasted bitter ("like gall") but she ate it, and immediately felt so badly in the throat that she could not eat the remaining three. Calling a waiter she complained of the oysters, and was given a cup of coffee to take away the bitter taste. The taste remained, however, and she became shaky, chilly, feverish and nauseated. She went home and a doctor was called who removed the contents of her stomach by a pump, but a more or less serious illness resulted. For the damages thus occasioned an action was instituted in the Hudson County Circuit Court by Mrs. Nisky for her sufferings, and by her husband for loss of the wife's services and expenses of effecting a cure.

The pleadings as filed alleged in the first count breach of warranty generally; in the second, negligence in the preparation and service of the food; and in the third, breach of warranty under the Sale of Goods act of 1907, page 311, section 15, subdivision 1.

At the trial and on this appeal the count for negligence was abandoned and the case rested wholly upon the counts for breach of warranty; appellant's brief stating that "the case was tried on the first and third counts of the complaint," and that the trial judge erroneously decided "that there was no implied warranty." At the conclusion of the plaintiff's evidence a motion of defendant's counsel for a nonsuit was granted by the learned trial judge, and it is this ruling that is now complained of as the sole ground of appeal.

It is urged by appellant, first, that a meal served at a restaurant carries with it under the common law a warranty that the ingredients of the meal are fit for human consumption; and second, that even if this be not so, such obligation exists by virtue of paragraph 15, subdivision 1 of the act of 1907 (page 316), entitled "An act concerning the sale of goods and to make uniform the law relating thereto."

Neither the research of counsel nor our own examination discover that the question has ever been presented to, or decided by, the courts of this state, and this alone should give us pause before attaching to the transaction the obligation of a warranty as part of our unwritten law.

At common law, in the absence of express warranty or representation from which a warranty could be inferred, the mere sale of goods without more did not warrant the quality of the article sold. *Beninger* v. *Corwin*, 24 *N. J. L.* 257, and such is the universal rule. 35 *Cyc.* 397. When, however, the seller is informed by the buyer of the purposes for which the goods are purchased, there is an implied warranty that the thing sold is fit for the intended purpose. This also is a rule of which there is universal acceptance. 35 *Cyc.* 399, and cases cited.

It may be fairly assumed that the appellant in the present case by implication apprised the respondent that the oysters were to be eaten, and if the transaction constituted a sale of

the oysters within the purview of either the common or statute law, then there would seem to have been a warranty, and the respondent would be liable.

From the earliest times, however, a distinction has been drawn between a sale of an article and the furnishing of food at an eating house, hotel or restaurant; the latter partaking rather of the character of service, in which case the standard of liability is the failure to use that reasonable care which the circumstances require. As was said many years ago in *Parker* v. *Flint,* reported in 12 *Mod.* 254, "an innkeeper * * * does not sell but utters his provisions," and by Professor Beale, in his *Treatise on Innkeepers,* section 169: "As an innkeeper does not lease his room, he does not sell the food he supplies to his guests. It is his duty to supply such food as the guest needs, and the corresponding right of the guest to consume the food he needs and to take no more. Having finished his meal he has no right to take food from the table, even the uneaten portion of the food supplied him. Nor can he claim a certain portion of the food as his own to be handed over to another in case he chooses not to consume it himself."

The authorities distinguishing the transaction from a sale recognize that while the food served constitutes, of course, an essential part, yet, serving it cannot be regarded as a sale of goods, and this we think the common understanding. A customer at an eating place seeks not to make a purchase, but to be served with food to such reasonable extent as his present needs require. With the service go a place, more or less attractive, in which to eat it, a table, dishes, linen, silver, waiters and sometimes music as an accompaniment—all tending to render more agreeable and palatable that which he eats. The food he obtains is then and there consumed; he does not eat the portion he can comfortably devour and place the remainder in his pockets or other receptacle, to be stored away for future needs. So, one who purchases a steamship ticket, or one who registers at a hotel, does not conceive the transaction as a sale of goods when, as part of his passage in the one case, and as a guest in the other, he is supplied with meals; nor does one who enters a restaurant to be sup-

plied with a meal or any portion thereof so regard the supplying of his food. This attitude of the public mind is indicated by the familiar signs, "Meals Served Here," "Dinners Served Here," and the like.

We think enough has been said to indicate that the service of food at eating houses has never been and cannot be regarded as a sale at common law, but this view is fortified by the absence of litigation (until quite recent years), based upon a claim of warranty, which would necessarily follow if the transaction constituted a sale. In no case in this state has such a contention ever been made, and even in the States of Massachusetts and New York, from which cases so strongly relied upon by the appellant come, it remained for the modern Sale of Goods act to invite litigation along such lines.

Assuming, therefore, as we do, that food served at a restaurant is not a sale at common law, the question remains whether there arises an obligation greater than that of reasonable care according to the circumstances. The answer to this question we think is not doubtful. In 26 *Corp. Jur.* 786, it is said: "The keeper of a public eating place engaged in the business of serving food to customers, is bound to use due care and see that the food served to his customers, at his place of business, is fit for human consumption, and may be eaten without its causing injury; and for an injury caused by negligence in failing to observe this duty to his patrons, such keeper is liable." Sustaining this statement of the law are *Bigelow* v. *Maine Central Railroad,* 110 *Me.* 105 (meals served in dining car); *Sheffer* v. *Willoughby,* 163 *Ill.* 518 (meals served at restaurant); *Valeri* v. *Pullman Co.,* 218 *Fed. Rep.* 519 (food served in buffet car); *King* v. *Davis,* 296 *Id.* 986, affirming Supreme Court of District of Columbia (dining car); *Merril* v. *Hodson,* 91 *Atl. Rep.* 533 (food served in restaurant); *Travis* v. *Louisville Railroad,* 183 *Ala.* 415.

To the contrary are the cases in Massachusetts and New York (and in possibly one or two other states), and these are earnestly pressed upon us by the appellant as establishing the true standard of liability. They are, particularly, *Friend* v. *Childs Dining Hall Co.,* 231 *Mass.* 65, and *Temple* v.

*Keeler*, 238 *N. Y.* 344. In the former Mr. Justice Crosby filed a dissenting opinion vindicating, as we think, the rule of the common law as herein stated and its continued applicability; and in the majority opinion in that case it is conceded that "the larger number of decisions by courts of this country hold that the liability of the innkeeper and restaurant keeper for furnishing deleterious food rests upon, negligence," and also that "the question [of warranty] has not been raised in any of our [Massachusetts] recent decisions against those who serve food for immediate consumption on the premises." We are urged to follow the decisions in those cases and bring the restaurant keeper within the law of sales as a matter of public policy and upon the theory that no reasonable ground for distinguishment exists between the sale of goods and the service of food. We do not feel ourselves at liberty to do so. Conceiving the common law to be settled that, as applied to the facts of this case, the duty of the defendant was to exercise the reasonable care that the circumstances required; if the law is to be modified it must come by legislative action.

Answering appellant's second contention that the common law has been modified by the Sale of Goods act, already referred to, we think it is clear, not only from the foregoing, but from the avowed scope and purpose of that act, which, in respect to the question here involved, is but declaratory of the common law, that such contention cannot be sustained. The fifteenth section reads: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment [whether he be the grower or manufacturer or not], there is an implied warranty that the goods shall be reasonably fit for such purpose."

This is the language of the cases and was already the rule at common law. Unless, therefore, food served at a restaurant becomes a "sale of goods" by virtue of that act, it is quite clear that no change has arisen through legislation. Our reading of the act convinces us that such change was neither effected or intended. There is nothing in the act to suggest that it was intended to bring a transaction theretofore not

recognized as a sale within its scope. We find no suggestion that a qualified transfer of food for limited purposes as hereinbefore indicated, is to be transformed into a sale within the intendment of the act. The act contemplates a seller and a buyer, and a contract under which the seller shall part with dominion and control over the article sold either at once or in the future, and that such dominion and control shall pass exclusively to the buyer to do with the article purchased as he will. The act is commonly known as the "Sale of Goods act," and its title implies that sale of goods alone is its subject. The legislature not having declared that a transaction such as this, in which service to the individual forms so large a part, shall constitute a sale, we are not privileged to incorporate it in the act by judical ruling.

Our conclusion, therefore, is that neither at common law nor by virtue of the act of 1907 was there a warranty that the food supplied and served at a restaurant, as was done in the present case, was free from injurious or deleterious substance.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.