273 N.J. Super. 102 (1993)
640 A.2d 1225
ARNOLD KOSTER, LENORE KOSTER, AMANDA KOSTER AND MARCIE RABIN, PLAINTIFFS,
v.
SCOTCH ASSOCIATES, CHARLIE O'S, ET AL., DEFENDANTS. RICHARD REISS AND DEBORAH REISS, PLAINTIFFS,
v.
SCOTCH ASSOCIATES AND/OR CHARLIE O'S, INC., ET AL., DEFENDANTS. STANLEY ELLIOTT AND MYRLTE ELLIOTT, PLAINTIFFS,
v.
WILLIAM P. MCCORMICK AND CHARLIE O'S, INC., A NEW JERSEY CORPORATION, DEFENDANTS. DWAYNE WARREN, TODD WARREN, MANUEL KREUGER, LILLIAN KREUGER, TERI KREUGER, HARRISE KREUGER AND IRA LEVINSTON, PLAINTIFFS,
v.
SCOTCH ASSOCIATES, CHARLIE O'S, INC. AND WILLIAM MCCORMICK T/A SMUGGLER'S COVE AND FRANK GARGUILO AND SONS, DEFENDANTS. PAULETTE FERGUSON, MICHAEL FERGUSON AND MARIA FERGUSON, PLAINTIFFS,
v.
SCOTCH ASSOCIATES AND/OR CHARLIE O'S, INC. T/A AND/OR SMUGGLER'S COVE, DEFENDANTS. STANLEY MARKO, PLAINTIFF,
v.
SMUGGLER'S COVE, INC., JOHN DOE, INC., SCOTTY McCORMICK T/A SMUGGLER'S COVE, ET AL., DEFENDANTS. CHARLIE O'S, INC., AND WILLIAM MCCORMICK, DEFENDANTS/THIRD-PARTY PLAINTIFFS,
v.
FRANK GARGUILO AND FRANK GARGUILO & SON, THIRD-PARTY DEFENDANTS. OREST PELECHATY AND SUSAN VELICOFF, HIS WIFE, PLAINTIFFS,
v.
SCOTCH ASSOCIATES, AND CHARLIE O'S, INC. T/A SMUGGLER'S COVE, ET AL., DEFENDANTS/THIRD-PARTY PLAINTIFFS,
v.
FRANK GARGUILO AND FRANK GARGUILO & SONS, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided December 3, 1993.
*103 Cornelius W. Caruso, for plaintiffs Arnold, Lenore and Amanda Koster, Marcie Rabin and Richard and Deborah Reiss (Ravitch, Koster, Tobin, Oleckna, Reitman & Greenstein, attorneys).
Patricia F. Hernandez, for plaintiffs Stanley and Myrtle Elliott, and Paulette, Michael and Maria Ferguson (Stender & Hernandez, attorneys).
M. Stanley Susskind, for plaintiff Stanley Marko (Susskind & Susskind, attorneys).
*104 Judith DeRosa, for plaintiffs Orest Pelechaty and Susan Velicoff (Conti, Kuhrt & Femia, attorneys).
Andrew R. Jacobs, for plaintiffs Dwayne and Todd Warren, Manuel, Lillian, Teri and Harrise Kreuger and Ira Levinston (Fitzsimmons, Ringle & Jacobs, attorneys).
Marc S. Gaffrey, for third-party defendants, Frank Garguilo and Frank Garguilo & Sons (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).
Isaac Henkoff, defendants/third-party plaintiffs, Scotch Associates, Charlie O's, Inc., t/a Smuggler's Cove and William McCormick (Chapman, Henkoff, Kessler, Peduto & Saffer, attorneys).

OPINION
MENZA, J.S.C.
Plaintiffs move for summary judgment. The question presented in this case is whether a restaurant is strictly liable for serving adulterated food. This precise issue has not been decided in New Jersey.
All of the plaintiffs suffered food poisoning from salmonella enteritidis (hereinafter salmonella) after having dined at the defendant's restaurant on five separate days in May 1990. The plaintiffs were all served different foods and there is no direct evidence that any particular food was the cause of the food poisoning. There is some indication, however, that the raw eggs in the caesar salad may have been the source of the salmonella.
The plaintiffs contend that the defendant is strictly liable. The defendant responds that principles of strict liability are inapplicable to food served in a restaurant. It also argues that it cannot be liable to the plaintiffs for the harm caused to them because the source of the salmonella was the raw eggs which had been purchased from the third-party defendant and which the restaurant was unable to detect.
*105 The New Jersey Department of Health conducted an investigation of the incident. The relevant portions of the report of that investigation states:
Food questionnaires implicated Caesar salad as a vehicle of transmission. Salmonella enteritidis was recovered from stool specimens submitted by 25 restaurant patrons and 10 employees. The leftover raw eggs were tested and found negative for Salmonella enteritidis ...
Three dozen eggs leftover from the shipment of four cases of eggs received by the restaurant on May 9th were submitted to the State Laboratory and were found negative for salmonellae ...
The investigation of the food handling practices revealed that the food handlers were not familiar with good food handling practices ...
Food handlers did not practice proper personal hygiene ...
DISCUSSION
In this outbreak the epidemic curve suggests a common source outbreak.
The incubation period, the clinical symptoms and the duration of the symptoms are consistent with salmonellosis. Isolation of S.e. from patrons' and food handlers' stools provide supportive evidence of this conclusion. The precise way in which S.e. was introduced into the restaurant, whether by person or food, could not be determined. The fact that food-specific attack rates implicated only one food, Caesar salad, as the vehicle of infection, and the other confirmed cases of S.e. were associated with other foods consumed at different days, not statistically significant, suggests that a cross contamination may also have occurred ...
There are three basic reasons for concluding that the defendant restaurant is strictly liable to the plaintiff: the Uniform Commercial Code (UCC), N.J.S.A. 12A:2-314; the Adulterated Food Statute, N.J.S.A. 24:5-1 to -15; and the Products Liability Statute, N.J.S.A. 2A:51C-1(b)(3).

The UCC
In 1927, New Jersey's highest court decided that food served in a restaurant constituted a service rather than a sale and that therefore the warranty of merchantability and fitness for use did not apply. In Nisky v. Childs Co., 103 N.J.L. 464, 467, 135 A. 805 (E. & A. 1927), the Court stated:
A customer at an eating place seeks not to make a purchase, but to be served with food to such reasonable extent as his present needs require. With the service goes a place, more or less attractive, in which to eat it, a table, dishes, linen, silver, waiters and sometimes music as accompaniment  all tending to render more agreeable and palatable that which he eats.
*106 The view expressed in Nisky was a minority one. The majority took the position that the furnishing of food at a restaurant constituted a sale and that therefore the implied warranty of merchantability applied. The minority view was severely criticized by legal authorities:
The Connecticut-New Jersey rule has been severely criticized as not only being unrealistic and not in harmony with modern business conditions and methods of serving food, but as being based to some extent upon "a humane solicitude for the plight of that legendary person, the poor boardinghouse keeper, who might be financially ruined by the fortuitous appearance in food furnished a patron of matter in which the processes of decay have gone too far, or of some alien substance such as broken glass, or a shell, a pebble, a splinter of wood, or a button," as bringing about an inconsistency and incongruity in the law so that "if one is poisoned by bad food which he takes out of the restaurant, he may recover because he may rely upon the implied assurance that it is fit to eat, but, if he is poisoned by bad food that he buys in a cafeteria and carries to a table himself in dishes which he has in part selected, it is not a sale and he may be poisoned with impunity.
[V. Woerner, Annotation, Implied Warranty of Fitness by One serving food, 7 A.L.R.2d 1027, 1030.]
The Nisky case remained good law until 1963, when the Uniform Commercial Code's implied warranty of merchantability provision was amended to include the serving of food:
A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used.

[N.J.S.A. 12A:2-314.]
After the adoption of the amendment and a year before it took effect, the Supreme Court in Sofman v. Denham Food Service, Inc., 37 N.J. 304, 181 A.2d 168 (1962), held that the ruling of the Nisky case should not be applied to food eaten in a cafeteria. The court strongly suggested that Nisky was no longer the law, but declined to extend its rulings to restaurants generally. The court stated:

Nisky may indeed be unsound on its own facts but we believe that whether it is, should be reserved for a case in which the issue must be met. The question may not arise since the Legislature has overturned Nisky, as well as the underlying rule which Nisky applied to a restaurant, by adopting the Uniform Commercial Code, effective January 1, 1963. N.J.S.A. 12A:2-314(1). All that need now be decided is that the rule applicable to an innkeeper should not be applied to a cafeteria where *107 it would be plainly a myth to say that food is not "sold," and that a refusal to go beyond the precise holding of Nisky is well supported by the Legislature's disapproval of the underlying concept which Nisky invoked.

[Id. at 308, 181 A.2d 168.]
In Jackson v. Muhlenberg Hosp. et al., 96 N.J. Super. 314, 232 A.2d 879 (Law Div. 1967), the court held that supplying of blood by a hospital constituted a sale. This case, decided after Sofman and after the adoption of the UCC amendment, confirmed the demise of the Nisky doctrine:
The Uniform Commercial Code in N.J.S.A. 12A:2-314(1) has put to rest the widely criticized holding of Nisky v. Childs, Co., 103 N.J.L. 464 [135 A. 805], 50 A.L.R. 227 (E. & A. 1927), that the serving of food or drink in a restaurant amounts to a "service" and not a "sale" and bears no warranty of wholesomeness. See also Sofman v. Denham Food Service, Inc., 37 N.J. 304 [181 A.2d 168] (1962), especially the concurring opinion of Justice Schettino.
The rule that food served in a restaurant was not impliedly warranted to be fit for human consumption although food sold in a store was so warranted, had no support in modern concepts of justice. It was an anachronism.

[Id., 96 N.J. Super. at 323, 232 A.2d 879.]
The issue must be met in this case.
There is simply no room for dispute with regard to the applicability of the UCC. The service of food in a restaurant is a sale. And a restaurant which sells the food to its customers warrants that the food will not be foul. The sale of food in a restaurant therefore fits perfectly within the UCC definition of the implied warranty of merchantability. The restaurant is thus strictly liable to the plaintiffs.

The Adulterated Food Statute
The buying, selling and distribution of food to the public is a highly regulated field. New Jersey's Food and Drug Act, N.J.S.A. 24:1-1 to 24:21-53, sets forth the standards and guidelines governing the sale and distribution of food.
N.J.S.A. 24:5-1 provides: "No person shall distribute or sell, ... any food, ... which under any of the provisions of this subtitle is adulterated...."
*108 It further defines adulterated food as follows: "If it bears or contains any poisonous or deleterious substance which may render it injurious to health ... If it falls below the standard of purity, quality or strength which it purports or is represented to possess."
The statute imposes penalties for its violation (N.J.S.A. 24:17-1) but is silent regarding civil liability.
Although no recent New Jersey cases have addressed the question of whether a breach of the Adulterated Food Statute imposes civil liability, cases in other jurisdictions with similar statutes have concluded that civil liability should be imposed for a violation of a statute.
In the treatise American Jurisprudence, the authors state:
It has been indicated that the usual measure of the duty of reasonable care applicable to a seller of food is superseded by a statute proscribing the sale of adulterated food, thus making the seller virtually an insurer of the product and depriving him of a defense based on his exercise of due care. It is also said that statutes prohibiting the sale of adulterated food require strict obedience, their violation ordinarily imposing liability for damages which may follow as a proximate result of such violation.
A number of decisions involving the violation of pure food statute or statutes regulating the manufacture, preparation, or sale of food products have held or indicated that a defendant found to have violated such a statute is guilty of negligence per se, or negligence as a matter of law, and this is so even though the statute itself does not expressly confer a right of action upon a person injured by such violation.

[63 Am.Jur.2d Products Liability § 391, at 531, 532.]
Ordinarily a violation of a statute is not negligence per se but merely evidence of negligence.
Ordinarily, the determination that a party has violated "a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability." Waterson v. General Motors, 111 N.J. 238, 263, 544 A.2d 357 (1988); Horbal v. McNeil, 66 N.J. 99, 103, 328 A.2d 604 (1974). The reason is that statutes rarely define a standard of conduct in the language of common-law negligence. Hence, proof of a bare violation of a statutory duty ordinarily is not the same as proof of negligence.

[Eaton v. Eaton, 119 N.J. 628, 642, 575 A.2d 858 (1990).]
But it was also noted that in some circumstances a violation of a statute does constitute negligence: "When, however, a statute *109 specifically incorporates a common-law standard of care, a jury finding of a statutory violation constitutes a finding of negligence."

[Id. at 642-43, 575 A.2d 858.]
The common law has always imposed a high standard of care on the preparation and serving of food.
From very early times, the common law imposed an extraordinary duty on purveyors of food and drink to provide wholesome, pure products. (citations omitted). In fact, it was from these cases that the doctrine of strict liability arose. (citations omitted). Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer) (1960) 69 Yale L.J. 1099, 1103, 1114 [tracing doctrine back to 1266 and an English statute prohibiting victualers and cooks from selling "corrupt" food for immediate consumption]; Titus, Restatement (Second) of Torts Section 402A and the Uniform Commercial Code (1969) 22 Stan.L.Rev. 713, 735-742 [noting early English cases imposing liability on taverns selling "corrupt" food for immediate consumption].)
[Mexicali Rose v. Superior Court (Clark), 1 Cal.4th 617, 4 Cal. Rptr.2d 145, 158, 822 P.2d 1292, 1305 (1992). (Mosk, J., dissenting).]
In fact, as noted in Prosser and Keaton on Torts, products liability law evolved from the early felt need in the common law to protect consumers from tainted food:
With the liability of the seller of chattels to the ultimate consumer once established on the basis of negligence, it was to be expected that some attempt would be made to carry his responsibility even further, and to find some ground of strict liability which would make the seller in effect an insurer of the safety of the product, even though he had exercised all reasonable care and even when there was no privity of contract between the victim and the target defendant. The first case  on the heels of a prolonged agitation over food and drink  which discarded the requirement of privity of contract was Mazetti v. Armour & Co. in Washington in 1913. It was followed, rapidly and then slowly, over almost half a century, by other counts which found strict liability as to defective food and drink, until by 1960 the majority of American courts had made it an established rule.

[Prosser and Keaton on Torts, § 97 (5th ed.).]
The New Jersey Food and Drug Act clearly incorporates common law principles safeguarding consumers against unwholesome foods. Therefore, a violation of the statute is, in itself, an act of negligence.
The defendant restaurant has violated the statute. It is therefore liable.

*110 The Products Liability Statute

The third basis for the imposition of liability is the products liability statute, (N.J.S.A. 2A:58C-1 et seq.). The statute provides: "`Product liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions of harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3).[1]
The sale of food is the sale of a product. See N.J.S.A. 2A:58C-1, Senate Judiciary Committee Statement, p. 465 (Senate No. 2805-L. 1987, c. 197).
The statute also provides that: "A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose...." N.J.S.A. 2A:58C-2.
In Wachtel v. Rosol, 159 Conn. 496, 271 A.2d 84 (1970), the Connecticut Supreme Court referring to the Restatement as authority held that a restaurant was strictly liable to a customer who became ill when he ate a sandwich tainted with salmonella. The court stated that:
The sale of a sandwich, by a restaurateur on the premises ... carries the necessary implication that the sandwich was expected to reach the customer without substantial change in the condition in which it was sold. The allegations of the count sufficiently stated a cause of action for strict tort liability.
We have ... adopted § 402 A of the Restatement, and the rule there announced applies to "any product in a defective condition unreasonably dangerous to the user or consumer or to his property." We believe that the sandwich in this case falls within the meaning of "any product," and we note that comment d under § 402 A declares that "[t]he rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it would obviously include them."

[Id., 271 A.2d at 86.]
*111 See also Hebert v. Loveless, 474 S.W.2d 732 (Tex.Civ.App. 1971) (strict liability cause of action lies for a restaurant patron who proves that contaminated food supplied by the restaurant was the proximate cause of his illness; "Texas is firmly committed to the rule stated in the Restatement of Torts (2d Ed.), § 402 A").
The defendant restaurant served the plaintiffs food which was not reasonably fit, suitable or safe and which caused them harm. It is therefore liable under the Products Liability Statute.
For the reasons set forth above, the motion of the plaintiffs is granted.
NOTES
[1] The statute clearly subsumes the implied warranty of merchantability set forth in the UCC. "The Product Liability Act no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for `harm' (as defined in the Act) caused by a defective product." See Tirrell v. Navistar Intern., Inc., 248 N.J. Super. 390, 398, 591 A.2d 643 (App.Div. 1991); N.J.S.A. 58C-1(3).