**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3739-16T1

KATHLEEN NICHOLSON and
JOHN NICHOLSON, husband
and wife,

    Plaintiffs-Appellants,

v.

BLOOMIN BRANDS, INC. and
OUTBACK STEAKHOUSE,

    Defendants-Respondents.

_____

Argued June 7, 2018 — Decided July 30, 2018

Before Judges Haas, Rothstadt, and Gooden
Brown.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Docket No.
L-0432-15.

Chris H. Colabella argued the cause for
appellants (Gruber, Colabella, Liuzza &
Thompson, attorneys; Chris H. Colabella, of
counsel; Virginia D. Liotta, on the briefs).

Norman W. Briggs argued the cause for
respondents (Briggs Law Office, LLC,
attorneys; Norman W. Briggs, of counsel;
Adrienne Chapman, on the brief).

PER CURIAM

Plaintiff Kathleen Nicholson and her husband John Nicholson, asserting a per quod claim, filed a six-count complaint against defendants Bloomin Brands, Inc., Outback Steakhouse, and various fictitious entities, when Kathleen[1] became ill after dining at defendant Outback Steakhouse (Outback). Alleging that her dinner at Outback was the source of the Salmonella bacteria that caused her illness, Kathleen asserted claims for negligence, breach of the implied warranty of merchantability, N.J.S.A. 12A:2-314, and violations of the New Jersey Food and Drug Act, N.J.S.A. 24:1-1 to 17-8, and the New Jersey Products Liability Act (NJPLA), N.J.S.A. 2A:58C-1 to -11. After discovery concluded, the trial court granted defendants' motion for summary judgment based on plaintiffs' failure to establish causation. Plaintiffs appeal from the March 20, 2017 memorializing order dismissing their complaint with prejudice. We affirm.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

_____

[1] We refer to the Nicholsons by their first names to avoid any confusion caused by their common surname. We intend no disrespect.

On Sunday, April 7, 2013, at approximately 2:00 p.m., plaintiffs dined at Outback with their daughter, her fiancé, her fiancé's mother, and the mother's boyfriend. Kathleen consumed a Samuel Adams beer, a non-seafood cream-based soup, mahi-mahi, shrimp, scallops, and possibly a potato. No one else in her party ordered or consumed those items, and she did not eat any appetizers or any food from anyone else's plate. In the forty-eight hour period prior to eating at Outback, Kathleen had only consumed a chocolate donut on Friday night, chocolate chip cookies and saltine crackers on Saturday night, and coffee with milk each morning, including Sunday morning prior to arriving at Outback.[2]

Kathleen and her party left Outback at about 4:30 p.m., and plaintiffs arrived home at about 6:30 p.m. Later that night, at about 11:30 p.m., Kathleen became "very nauseous" and vomited several times throughout the night. The next morning, Monday, April 8, 2013, at about 10:00 a.m., Kathleen began to experience diarrhea. From Tuesday, April 9, 2013, into Wednesday, April 10, 2013, Kathleen developed a slight fever and chills, while the vomiting and diarrhea continued. Other than water and Pepto-Bismol, Kathleen consumed nothing during this entire period.

---

[2] At her deposition, Kathleen testified that on the two days immediately preceding her visit to Outback, she had worked as a hostess at Red Lobster from 11:00 a.m. to 9:00 p.m. each day, but did not eat anything while at work.

 A-3739-16T1

Initially, Kathleen believed she was suffering from a stomach virus. However, when her symptoms worsened, she went to her doctor on Thursday, April 11, 2013, and he promptly sent her to the emergency room.

At the hospital, the responding physicians diagnosed Kathleen with "gastroenteritis, severe dehydration, sepsis, renal insufficiency[,] and cardiac (demand) ischemia."[3] Blood tests revealed Kathleen had Salmonella species Group D in her system.[4] She was later diagnosed with "hypovolemic and septic shock associated with severe colitis, sigmoid perforation, and acute kidney injury." On April 16, 2013, she underwent a colostomy to repair a perforation in her colon. She remained hospitalized until April 25, 2013, when she was transferred to Troy Hill Center for Rehabilitation, where she remained until May 9, 2013. On May 8, 2014, Kathleen underwent a reversal of her colostomy.

Plaintiffs filed suit against defendants on April 2, 2015. To support their claim, they submitted expert reports prepared by

---

[3] Medical records described Kathleen at the time in question as a sixty-four year old heavy smoker with no significant past medical history.

[4] At her deposition, Kathleen testified that "[o]nce they said it was [S]almonella poisoning, [she] linked it to [the Outback meal], because that was the only thing [she] had to eat." However, she acknowledged that none of her treating doctors told her that the Outback meal was the source of the Salmonella, and none of the other members of her party became ill after dining at Outback.

George J. Zameska, Jr., M.S., R.S., C.F.S.P., and Dr. Richard Snepar, M.D., F.A.C.P., as well as the experts' corresponding deposition testimony. After reviewing the discovery, Zameska, plaintiffs' liability expert, concluded that although at the time of the incident, Outback "had current valid permits and was legally operating" and there were no reported incidents of other patrons becoming ill after eating at Outback, Outback had "failed to meet legal requirements regarding having properly trained and certified food personnel present and did not act responsibly and effectively in its operation to manage foodborne disease risk factors to protect [Kathleen] from exposure to sources of Salmonella infection."

According to Zameska, "Salmonella infection is a foodborne gastrointestinal illness that results from ingestion of enteric pathogenic organisms, viruses or bacteria, which can live and inhabit the intestinal tract of humans," resulting "in inflammation or damage to the intestinal tract and generally can cause reaction symptoms of vomiting and diarrhea." Zameska reported that the Salmonella Group D organisms identified in Kathleen's blood culture analysis included species that cause "foodborne illness outbreaks . . . associated with poultry and eggs." He did not indicate, however, that any food Kathleen ate was a natural carrier of Salmonella.

A-3739-16T1

According to Zameska, the two most common ways to contract foodborne Salmonella infections are from cross-contamination by ingesting a food that was handled or touched by a person infected with these organisms or by "[d]irect ingestion of a food that is naturally contaminated with Salmonella [and] is not cooked, held, or cooled properly, thus allowing this organism to survive or grow." At his deposition, Zameska acknowledged he could not identify a specific food as the cause of Kathleen's Salmonella infection or an employee that caused the illness. Zameska also admitted there was "only the possibility that an employee could be a source of Salmonella in [Outback]," and there was "no specific identified food handling practice" or direct evidence of a sanitation or cleaning practice that caused Kathleen's illness.

He also agreed with defendants' expert, John J. Farmer, III, Ph. D., that "[f]or 2013, the number of Salmonella infections with no proven source/cause [was] probably greater than 99.9 percent."[5]

---

[5] Zamesky explained that a "confirmed foodborne illness outbreak" occurs when "the agent organism that caused the illness" is also found "in the food[,] [a]nd for 99.9 percent of the cases, that doesn't happen." Zamesky also acknowledged Dr. Farmer's reference in his report to an April 2013 New Jersey Department of Health (DOH) investigation that confirmed Kathleen's case of Salmonella infection but concluded that the source of infection was unknown. Relying on the DOH investigation, Dr. Farmer had opined that Kathleen's Salmonella infection "was not caused by the food she ate, or by any other exposure" at Outback but "could have been caused by a contaminated food she handled or ate, or . . . by many

A-3739-16T1

Notably, Zameska also admitted that "[j]ust because someone says they're sick does not necessarily mean that the last meal they consumed is what made them sick."

Nonetheless, Zameska concluded it was likely that Kathleen "was served food(s) that contained Salmonella organism contaminates, especially from foods ordered that were not fully processed to reduce pathogens to safe levels; or being served foods cross-contaminated with Salmonella organisms by equipment, utensils, or workers." To support his conclusion, Zameska cited the absence of documentation[6] demonstrating: (1) that Outback managers and employees had received "training in regard to food safety practices necessary to ensure the safe production of food"; (2) "that foods being offered for consumption [were] properly treated to reduce pathogens to safe levels"; (3) the monitoring of safety requirements for food preparation, production, and handling; (4) compliance with "sanitation practices and procedures to ensure establishment surfaces and equipment [were] free of contamination"; (5) "[c]ompliance with ill employee exclusion and restrictions"; and (6) the monitoring of food employees to ensure

---

different exposures that she had in the [sixteen]-day period before her [symptoms] began."

[6]   At his deposition, Zameska testified that if shown the appropriate documentation, he would modify his conclusions.

that potential Salmonella carriers "follow[ed] established hygiene and hand washing requirements." In addition, Zameska pointed to the fact that the "[f]oods consumed by [Kathleen] were offered with a consumer advisory," despite consumers not considering such foods high risk and despite possibly violating New Jersey statutory requirements for foods being served with a consumer advisory.[7]

Further, according to Zameska, Kathleen "was not known to be exposed to or to have consumed food or beverage likely to be a source of Salmonella infection prior to consumption of the Outback Steakhouse meal," and "[t]he meal, the time-frame for the disease symptoms to occur, and development and progression of the subsequent illness [were] all consistent with ingestion of Salmonella contaminated food at the Outback Steakhouse." Zameska explained that Kathleen's "illness onset [was] consistent with published onset times" for the infection, which vary from six to seventy-two hours,[8] with the ensuing illness lasting for four to seven days. Additionally, Zameska noted that at sixty-four years old, Kathleen's age "place[d] her [at] a higher risk for acquiring

---

[7] See N.J.S.A. 24:1-1 to :21-53.

[8] At his deposition, Zamesky testified the normal exposure timeframe for the type of Salmonella infection contracted by Kathleen was "probably more close to six to [forty-eight] hours" as opposed to seventy-two hours.

foodborne illness due to the potential of being in an immune-compromised population group."

After reviewing Zameska's report, Kathleen's medical records, and plaintiffs' deposition testimony, plaintiffs' medical expert, Dr. Snepar, diagnosed Kathleen as suffering from "severe Salmonella gastroenteritis" and concluded her "illness was temporally related to her dining at [Outback]." Dr. Snepar noted "[h]er eating habits prior to the onset of illness were austere and of low risk for infection." Thus, he opined "with a reasonable degree of medical certainty" that "[t]he meal, the symptom free interval, and subsequent illness [were] all consistent with ingestion of [Salmonella] contaminated food at [Outback]." However, like Zameska, Dr. Snepar could not identify which food product, employee, or food handling violation caused the Salmonella infection in Kathleen.

After discovery ended, defendants moved for summary judgment, or alternatively, to bar plaintiffs' experts' opinions at trial. After oral argument, on March 20, 2017, the court issued a written decision granting defendants' motion. Citing Koster v. Scotch Assocs., 273 N.J. Super. 102, 105 (Law Div. 1993) and Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556 (1999), the court noted that "[w]hile a restaurant is strictly liable for serving adulterated food," plaintiffs "must still establish

causation." However, according to the court, plaintiffs "failed to identify the source of illness or a procedure [d]efendants breached." Instead, Kathleen stated "that no doctor had told her the source of her illness," and "Zameska also agreed there was no source of [S]almonella identified, or specific food handling practice at Outback that caused the illness."

In rejecting plaintiffs' argument that temporal association alone was sufficient to maintain her cause of action because the connection between the causal event and the injury were particularly strong, the court explained:

> The case [p]laintiffs utilize for that proposition, however, was one where the defendant had been cited for health code violations. Indeed, several unpublished cases follow that same reasoning — where a defendant had been cited for a health code violation, temporal association of plaintiff's illness is sufficient to defeat summary judgment. Such violation has not been found in this matter.
>
> . . . .
>
> This [c]ourt recognizes the unique difficulties [S]almonella poisoning present[s] to plaintiffs, with regards to causation and breach. However, plaintiffs must be able to identify some fact beyond temporal association which would allow a rational fact-finder to find in plaintiff[s'] favor.

Having granted defendants' summary judgment motion, the court took "no position as to [d]efendant[s'] request for [p]laintiffs'

experts' reports to be barred." The court entered a memorializing order on the same date, and this appeal followed.

On appeal, plaintiffs argue the court erred in granting summary judgment to defendants because plaintiffs offered sufficient proof to demonstrate a causal link between the Outback meal and Kathleen's Salmonella infection, such that the matter should have gone to the jury. We disagree.

We review a grant of summary judgment by applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (citations omitted) (quoting R. 4:46-1(c)).]

Kathleen's claim under the NJPLA incorporates all her other claims, as the NJPLA subsumes claims of product defect sounding in negligence. Ford Motor Credit Co., LLC, v. Mendola, 427 N.J. Super. 226, 240 (App. Div. 2012) ("[w]hether couched in terms of negligence, strict liability, or breach of an implied warranty, a

product liability cause of action is subject to [the NJPLA].").

Under the NJPLA, a product liability action is "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). This includes claims brought for harm caused by food cooked and sold at restaurants. Gupta v. Asha Enters., L.L.C., 422 N.J. Super. 136, 145 (App. Div. 2011). Therefore, a restaurant is strictly liable to its consumers under the NJPLA for serving adulterated food. Koster, 273 N.J. Super. at 110-11.

To establish liability under the NJPLA, a plaintiff has the burden of proving by a preponderance of the evidence that "the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user." Boyle v. Ford Motor Co., 399 N.J. Super. 18, 34 (App. Div. 2008) (quoting Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 97 (1999)). The presence of Salmonella in food is a defect, and a defendant is liable under the NJPLA if the presence of Salmonella causes a consumer's illness. See, e.g., Koster, 273 N.J. Super. at 110-11 (holding defendant restaurant liable under the NJPLA for serving food containing Salmonella); McGuinness v. Wakefern Corp., 257 N.J. Super. 339, 341-42 (Law Div. 1991)

(allowing plaintiffs to bring claim against suppliers of ingredients of lasagna containing Salmonella).

However, "[e]ven in a strict-liability action, a plaintiff must prove causation." Cruz-Mendez, 156 N.J. at 574. To establish causation, a plaintiff must prove the defendant's act or omission was both the factual and proximate cause of his or her injury. Ibid. The defendant's act or omission is the factual cause of an injury if, "but for the event, the [injury] probably would not have happened." Ibid. Proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the [injury] and without which the [injury] would not have occurred." Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996).

"Generally, the determination of proximate cause is an issue of fact for the [factfinder]." Cruz-Mendez, 156 N.J. at 576. However, courts should not send a case to the jury if the nature of the evidence would not allow them to determine the probable cause of the plaintiff's injury without guess or speculation. See Germann v. Matriss, 55 N.J. 193, 208-09 (1970) (finding error in the trial court's decision to deny defendant judgment at the close of the case where the evidence was "barren of any circumstances on the basis of which a reasonable [person] could attribute any

13

greater probative force" to any one of the proposed theories for how plaintiff was exposed to a tetanus spore).

> If the proof adduced at trial simply shows a number of possible causes, only one of which could be charged to the [defendant's] lack of due care, for the presence of the factor which eventuated in injury[,] the issue of the [defendant's] responsibility cannot be submitted to the jury for determination. To do so would be to authorize a decision on the basis of conjecture or speculation. It is only when there are circumstances present from which a reasonable [person] could find that the [defendant's] want of due care was more likely the probable cause that the issue of liability must go to the jury for determination.

> [Id. at 208.]

Absent direct evidence of Salmonella contamination, courts have accepted circumstantial evidence of causation, including unsanitary conditions at the defendant restaurant and health code violations. Koster, 273 N.J. Super. at 105. Courts have also found a reasonable inference of causation where a plaintiff provided evidence that other people who ate allegedly contaminated food also became ill. See McGuinness, 257 N.J. Super. at 341-42. Similarly, plaintiffs can prove causation by providing evidence that all those who ate a certain food became ill, but the one person who did not eat it was not affected. Lipari v. Nat'l Grocery Co., 120 N.J.L. 97, 98-99 (1938); Griffin v. James Butler Grocery Co., 108 N.J.L. 92, 93-94 (E & A 1931).

Here, plaintiffs' proofs did not permit a reasonable inference that defendants' acts or omissions were the probable cause of Kathleen's illness, and, like the trial court, we are satisfied that granting defendants' summary judgment motion was appropriate. We reject plaintiffs' argument that the court erroneously required them to prove causation "by direct evidence of the source alone," a "requirement [that] is not present in the prevailing case law." On the contrary, the court expressly noted that temporal association combined with circumstantial evidence such as known health code violations, none of which was present in this case, would have been sufficient to withstand summary judgment.

Indeed, other than temporal association, plaintiffs presented no evidence that anyone else in their party or that anyone else who ate at Outback that day became ill. Plaintiffs also failed to eliminate other possible sources of contamination. In the seventy-two hours before she became ill, Kathleen worked two shifts at another restaurant. Although, in her capacity as a hostess, she did not prepare or touch food, plaintiffs' experts did not negate the possibility of cross-contamination at that restaurant.

We also reject plaintiffs' contention that the trial court failed to properly consider their experts' opinions, particularly their liability expert, to find the requisite circumstantial

15                                          A-3739-16T1

evidence. On the contrary, the court explained that Zameska could not identify the source of the Salmonella or a "specific food handling practice at Outback that caused [Kathleen's] illness." Further, the court expressly referenced Zameska's deposition testimony that "[j]ust because someone says they're sick does not necessarily mean that the last meal they consumed is what made them sick."

Moreover, Zameska failed to analyze and expressly rule out the other foods Kathleen consumed during the incubation period to eliminate other potential sources of Salmonella. He relied on the absence of documentation, rather than the presence of violations, to support his conclusions regarding Outback's training and monitoring of employees as well as their production, preparation, and handling of food, food surfaces, and equipment. Further, as noted by the trial court, he could not identify the specific Outback food, employee, sanitation or cleaning practice that caused Kathleen's Salmonella infection and indicated that the foods she consumed at Outback were not commonly associated with Salmonella. Under these circumstances, plaintiffs did not raise a genuine issue of material fact, and a factfinder could only guess or speculate that the Outback meal was the proximate cause of Kathleen's Salmonella infection. See Germann, 55 N.J. at 208-09.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION